STATE OF NORTH CAROLINA v. FREDRICK CAMACHO

No. 226PA90

(Filed 14 August 1991)

1. **District Attorneys § 1 (NCI4th)— conflict of interest—order that district attorney request prosecution by attorney general—error**

   The trial court exceeded its authority by ordering the District Attorney to request that the Attorney General prosecute the charges against defendant where a member of his staff had previously been employed by the Public Defender's office during defendant's first trial. The district attorneys of the state are independent constitutional officers, and it is apparent that our Constitution and statutes give the district attorneys of the state the exclusive discretion and authority to determine when to request the prosecution of any individual case by the special prosecution division. North Carolina Constitution, article IV, section 18; N.C.G.S. § 114-11.6.

   **Am Jur 2d, Prosecuting Attorneys § 32.**

2. **Attorney General § 15 (NCI4th)— Attorney General ordered to prosecute—error**

   The trial court exceeded its authority in a murder and burglary prosecution by ordering that the Attorney General's office immediately assume prosecution of the case. The General Assembly made it clear that the special prosecution division is to participate in criminal prosecutions only if the Attorney General approves in his sole discretion as an independent constitutional officer.

   **Am Jur 2d, Attorney General §§ 13, 27.**

STATE v. CAMACHO

[329 N.C. 589 (1991)]

3. **Courts § 3 (NCI4th)— order that District Attorney withdraw from case—authority exceeded**

The trial court exceeded its authority in a prosecution for murder and burglary by ordering that the District Attorney and his entire staff withdraw from the case because a member of the staff had worked on the Public Defender's staff during defendant's first trial. Any order tending to infringe upon the constitutional powers and duties of an elected district attorney must be drawn as narrowly as possible and this order does not meet that standard.

**Am Jur 2d, Prosecuting Attorneys § 32.**

4. **District Attorneys § 4 (NCI4th)— conflict of interest— disqualification—definition of conflict**

The trial court exceeded its authority by ordering that the District Attorney and his entire staff withdraw from a murder and burglary prosecution because a member of his staff had worked for the Public Defender's office during defendant's first trial. It is apparent that the trial court ordered the District Attorney's office to withdraw solely on the ground that there was a possibility that an impression of conflict of interest might arise at some future time. A prosecutor may not be disqualified from prosecuting a criminal action unless and until the trial court determines that an actual conflict of interest exists; in this context, an actual conflict is demonstrated when a District Attorney or a member of his staff has previously represented the defendant with regard to the charges to be prosecuted and, as a result of the former attorney-client relationship, obtained confidential information which may be used to the defendant's detriment. Even then, any order of disqualification ordinarily should be directed only to the individual prosecutors exposed to the information.

**Am Jur 2d, Prosecuting Attorneys § 32.**

**Disqualification of prosecuting attorney on account of relationship with accused. 31 ALR2d 953.**

ON writ of certiorari to review a pretrial order entered by *Gray, J.*, at the 12 March 1990 Criminal Session of Superior Court, MECKLENBURG County. Heard in the Supreme Court on 13 March 1991.

STATE v. CAMACHO

[329 N.C. 589 (1991)]

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Special Deputy Attorney General, for the State-petitioner.*

*Isabel Scott Day, Public Defender, Twenty-Sixth Judicial District, and Jean B. Lawson for the defendant-respondent.*

MITCHELL, Justice.

The defendant, Fredrick Camacho, was indicted by the Grand Jury of Mecklenburg County on 17 March 1986 for the murder of Rhonda Leonard Price and for burglary. The charges were joined for trial, and the defendant was initially brought to trial at the 11 May 1987 Criminal Session of Superior Court, Mecklenburg County. That trial was terminated on 22 May 1987 by an order declaring a mistrial due to juror misconduct.

During preparations for a retrial of the charges against the defendant, motions were heard at the 12 March 1990 Criminal Session of Superior Court, Mecklenburg County. Those motions included a motion by the defendant that the Honorable Peter S. Gilchrist III, District Attorney of the Twenty-Sixth Prosecutorial District, and his entire staff be disqualified from the prosecution of the defendant upon the murder and burglary charges here in question.

In support of his motion, the defendant called as a witness Assistant District Attorney Gretchen Shappert. She testified that she had been employed as an assistant district attorney since September 1988. Previously, she had been employed as an assistant public defender by the Public Defender of the Twenty-Sixth District from March 1983 to September 1988. She was so employed during the spring of 1987 when others in the Public Defender's Office represented the defendant during his first trial on the charges involved here. She had done some work with other attorneys concerning a motion by the defendant alleging ineffective assistance of counsel. However, she had never seen any of the files concerning the defendant while she was with the Public Defender's Office. Although she recalled hearing others in the Public Defender's Office discuss the defendant's case, she had no recollection of the details of those conversations.

Ms. Shappert had neither been assigned to nor had any involvement with the merits of the defendant's case during her employment with the District Attorney's Office. Further, she had never revealed any information concerning the defendant's case to any

member of the District Attorney's Office, except to inform the District Attorney of the extent of her prior involvement—or lack of involvement—with the case while with the Public Defender's Office.

Ms. Shappert testified that after the defendant filed his motion to disqualify the District Attorney's Office, the District Attorney contacted her and asked her whether she had been involved with the defendant's case when she worked in the Public Defender's Office. She then told the District Attorney that she had been aware of the case and had done some legal research in connection with a motion alleging ineffective assistance of counsel, but that she had no recollection of the trial strategy employed. Further, she stated that "it was not a case I was assigned to and it was not a case that I had worked on." Ms. Shappert had no other conversations with the District Attorney or any member of his staff concerning the defendant.

At the conclusion of the hearing on the defendant's motion to disqualify the members of the District Attorney's Office, the trial court, based upon substantial competent evidence, orally entered its findings, conclusions and order as follows:

> That, Ms. Shappert was in the Public Defender's Office at the time of the preparation for and the trial of the first case, or the first trial involving this Defendant;

> That, subsequent to that, Ms. Shappert became [sic] to be with the District Attorney's Office during the course of the preparation for the second trial of the case;

> That, Ms. Shappert did participate in the argument of a motion, the Defendant's Motion for Ineffective Assistance of Counsel, while in the Public Defender's Office, but . . . that she did not have any contact, directly or indirectly, with the merits of the case in the connection of the preparation of that motion;

> That, while Ms. Shappert's present memory is that she obtained no confidential information about the Defendant's case while in the Public Defender's Office nor has she communicated any information of a confidential nature to the District Attorney's Office since being in the District Attorney's Office, her memory *may* be refreshed on some future occasion before

or during the second.trial, and she *may* inadvertently disclose such information to the District Attorney's Office.

In view of that, the Court orders, and *in order to avoid even the possibility or impression of any conflict of interest,* the Court directs that the District Attorney's Office immediately withdraw from the case; that the District Attorney's Office, including Ms. Shappert, have no further participation, either directly or indirectly, with the case; that the Attorney General's Office be contacted immediately by the District Attorney's Office for representation of the State in the matter; and that the Attorney General's Office shall immediately assume the prosecution of the case.

(Emphasis added.) The State's petition for a writ of certiorari to obtain appellate review of the trial court's order was allowed by this Court.

I.

[1] We first consider whether the trial court exceeded its authority by ordering the District Attorney to request that the Attorney General prosecute the charges against the defendant. We conclude that this part of the order exceeded the trial court's authority.

The several District Attorneys of the State are independent constitutional officers, elected in their districts by the qualified voters thereof, and their special duties are prescribed by the Constitution of North Carolina and by statutes. *NAACP v. Eure,* 245 N.C. 331, 95 S.E.2d 893 (1957); *State v. Loesch,* 237 N.C. 611, 75 S.E.2d 654 (1953); *State v. McAfee,* 189 N.C. 320, 127 S.E. 204 (1925). Our Constitution expressly provides that: "The District Attorney *shall . . .* be responsible for the *prosecution* on behalf of the State of *all* criminal actions in the Superior Courts of his district. . . ." N.C. Const. art. IV, § 18 (emphasis added). The clear mandate of that provision is that the responsibility and authority to prosecute all criminal actions in the superior courts is vested solely in the several District Attorneys of the State. *Loesch,* 237 N.C. 611, 75 S.E.2d 654. *Cf.,* N.C.G.S. § 7A-61 (1989) (District Attorney shall prosecute all criminal actions in the superior and district courts).

However, the elected District Attorney may, in his or her discretion and where otherwise permitted by law, delegate the prosecutorial function to others. For example, where the District Attorney consents to the employment of a private prosecutor and

continues in charge of the prosecution, the trial court may permit such a private prosecutor to appear for the State. *State v. Best*, 280 N.C. 413, 417, 186 S.E.2d 1, 4 (1972). The discretion to permit private prosecutors to appear when the District Attorney consents "has existed in our courts from their incipiency." *Id.* at 416, 186 S.E.2d at 3.

More to the point here, N.C.G.S. § 114-11.6 authorizes the several elected District Attorneys of the State to permit the Special Prosecution Division of the Office of the Attorney General to prosecute individual criminal cases in their prosecutorial districts. *See State v. Felts*, 79 N.C. App. 205, 210, 339 S.E.2d 99, 101, *disc. rev. denied*, 316 N.C. 555, 344 S.E.2d 11 (1986). When that statute is read *in pari materia* with article IV, section 18, of the Constitution of North Carolina, it is apparent that our Constitution and statutes give the District Attorneys of the State the exclusive discretion and authority to determine whether to request — and thus permit — the prosecution of any individual case by the Special Prosecution Division. *See Loesch*, 237 N.C. 611, 75 S.E.2d 654; *Felts*, 79 N.C. App. at 210, 339 S.E.2d at 101-102. Therefore, the trial court exceeded its authority and invaded the province of an independent constitutional officer in this case when it ordered the District Attorney to request that the Attorney General prosecute this defendant.

II.

[2]   We next consider whether the trial court exceeded its authority by ordering "that the Attorney General's Office shall immediately assume the prosecution of the case." We conclude that the trial court exceeded its authority.

Like the several District Attorneys of the State, the Attorney General of North Carolina is an independent constitutional officer. *Eure*, 245 N.C. at 336, 95 S.E.2d at 897. Article III, section 7, of the Constitution of North Carolina provides that there shall be an Attorney General and further provides that the duties of that office shall be those prescribed by law. N.C.G.S. § 114-11.6 created a Special Prosecution Division within the Office of the Attorney General and provided that it could *prosecute* criminal cases, but *only if requested* to do so by the appropriate District Attorney. *Cf.* N.C.G.S. § 114-2(4) (1987 & 1990 Cum. Supp.) (Attorney General to *advise* prosecutors, *when requested by them*); N.C.G.S. § 114-2(1) (1987 & 1990 Cum. Supp.) (Attorney General

STATE v. CAMACHO

[329 N.C. 589 (1991)]

directed to *appear* in causes or matters in which the State has an interest, but given no authority to *prosecute* criminal cases upon own motion). In passing N.C.G.S. § 114-11.6, however, the General Assembly made it clear that even upon a proper request and authorization by a District Attorney, the Special Prosecution Division is to participate in criminal prosecutions *only if* the Attorney General, in his *sole* discretion as an independent constitutional officer, approves. The trial court exceeded its authority when it ordered that "the Attorney General's Office shall immediately assume the prosecution of the case."

## III.

[3] We turn finally to the broader question raised here — whether the trial court exceeded its authority by ordering that "in order to avoid even the possibility or impression of any conflict of interest," the District Attorney and his entire staff must "withdraw from the case" and "have no further participation either directly or indirectly" with regard to the case. We conclude that the trial court exceeded its authority in several respects by entering this part of its order.

## A.

First, the trial court exceeded its authority when it ordered that the District Attorney's Office *have no further participation,* either directly or indirectly, with regard to the defendant's case. Even if a District Attorney, due to having previously represented the defendant, has received confidential information which will be detrimental to the defendant in the case to be prosecuted, an order directing that the District Attorney have "no participation" in the defendant's case would be highly suspect. Again, it must be remembered that the elected District Attorneys of North Carolina are constitutional officers of the State whose duties and responsibilities are in large part constitutionally and statutorily mandated. The courts of this State, including this Court, must, at the very least, make every possible effort to avoid unnecessarily interfering with the District Attorneys in their performance of such duties. *See generally Eure,* 245 N.C. 331, 95 S.E.2d 893. Therefore, any order tending to infringe upon the constitutional powers and duties of an elected District Attorney must be drawn as narrowly as possible. *Id.* The order in the present case directing that the District Attorney and his entire staff have "no further participation, either directly or indirectly" with regard to the defendant's case clearly

does not meet this standard and unnecessarily restricts a State official engaging in constitutional duties.

Two hypothetical examples will suffice to reveal the overreaching nature of this part of the trial court's order. First, the defendant here is charged by indictment with, *inter alia*, a capital crime. The several District Attorneys of the State are charged and entrusted with the duty of presenting indictments to the grand juries of the State. *State v. Cole*, 294 N.C. 304, 240 S.E.2d 355 (1978); *State v. Thomas*, 236 N.C. 454, 73 S.E.2d 283 (1952); N.C.G.S. §§ 15A-641, -644 (1988). *See Eure*, 245 N.C. 331, 95 S.E.2d 893; N.C. Const. art. IV, § 18. In capital cases such as this, a defendant may not waive the requirement of a proper indictment. N.C. Const. art. I, § 22; N.C.G.S. § 15A-642(b) (1988). Even in capital cases, however, an initial indictment occasionally will be incomplete or defective in some manner. In such cases, superseding indictments must be submitted. *See* N.C.G.S. § 15A-646 (1988). Even if a District Attorney had an actual conflict of interests and possessed information harmful to a defendant as a result of having previously represented him, an order prohibiting that District Attorney from presenting the required superseding indictment would exceed any steps necessary to protect the interests of the defendant or the courts. Such an order would unnecessarily interfere with the District Attorney's performance of constitutional and statutory duties, which only the District Attorney or his or her lawful designees may perform. Here, the trial court entered just such an unnecessarily all-encompassing order in a case in which the uncontroverted evidence tended to show—and the trial court found and concluded—that the District Attorney's Office had no actual conflict of interests.

Another hypothetical example also demonstrates the overbreadth of the order. In some cases in which a District Attorney has an actual conflict of interests which will require that he or she withdraw from the prosecution of a particular charge against a defendant, the District Attorney may elect—for reasons such as the imminent conviction of the defendant on unrelated charges— to dismiss the charge giving rise to the conflict. The District Attorney can in such situations avoid uselessly putting the State to the additional expense involved in having the Special Prosecution Division prosecute the defendant in the case in which the District Attorney has the conflict. An order prohibiting the District Attorney—the constitutional state official charged with making such decisions—from even dismissing charges sweeps much too broadly.

That part of the trial court's order directing that the District Attorney and his staff have "no further participation, either directly or indirectly" concerning the defendant's case interfered unnecessarily with a constitutional officer in the performance of his duties and exceeded the trial court's authority. *See Eure*, 245 N.C. 331, 95 S.E.2d 893.

B.

[4] Next, it is apparent from the wording of the order that the trial court ordered the District Attorney's Office to withdraw from this case solely upon the ground that there was a *possibility* that an *impression* of a conflict of interests might arise at some *future* time. This is made even more clear by the fact that, prior to that part of its order directing that the entire staff of the District Attorney's Office withdraw, the trial court gave a complete summary of the uncontroverted testimony. The trial court noted that the testimony tended to show that Assistant District Attorney Shappert had not had "any contact, directly or indirectly, with the merits of the case in connection with the preparation of" the defendant's motion alleging ineffective assistance of counsel. Further, the trial court also noted that the testimony tended to show that Ms. Shappert "obtained no confidential information about the defendant's case while in the Public Defender's Office nor has she communicated any information of a confidential nature to the District Attorney's Office. . . ." For reasons which follow, we conclude that the trial court erred by ordering that the District Attorney and his staff withdraw from this case solely because their prosecution of the defendant might create an appearance of a conflict of interests.

The issue of disqualification of a prosecutor's office due to one member's prior representation of a defendant has been addressed by the courts of other jurisdictions. Some jurisdictions follow a per se rule of disqualification. *See generally*, Annotation, *Disqualification of Prosecuting Attorney on Account of Relationship With Accused*, 31 ALR 3d 953 (1970 & Supp. 1990). Under such a per se rule, an entire prosecutor's staff is disqualified if one member previously represented the defendant on the charges to be tried, even though that member has neither acquired confidential information about the defendant nor betrayed any confidences. *E.g., State v. Chambers*, 86 N.M. 383, 524 P.2d 999 (Ct. App. 1974), *cert. denied*, 86 N.M. 372, 524 P.2d 988 (1974). Most of the opinions

applying a per se rule of disqualification, however, share at least two weaknesses; they mandate disqualification of a prosecutor's office solely upon an "appearance of impropriety" with no analysis of the facts before the court, and they fail to recognize any distinction between lawyers engaged in private practice and prosecutors engaged in constitutionally and statutorily mandated duties on behalf of the public. *E.g., State v. Latigue*, 108 Ariz. 521, 502 P.2d 1340 (1972); *People v. Stevens*, 642 P.2d 39 (Colo. Ct. App. 1981); *State v. Chambers*, 86 N.M. 383, 524 P.2d 999; *People v. Shinkle*, 51 N.Y.2d 417, 415 N.E.2d 909, 434 N.Y.S.2d 918 (1980). We conclude that such opinions applying a per se rule are unpersuasive.

Better reasoned decisions from other jurisdictions apply a different rule. Courts in those jurisdictions do not view the mere fact that a prosecutor once represented the defendant as establishing the existence of a conflict of interests or as requiring disqualification of an entire prosecutor's office. Rather than apply an all-encompassing draconian rule automatically disqualifying a prosecutor's staff from performing the duties of public office, those courts consider whether the prosecutor who formerly represented the defendant obtained any confidential information as a result of that representation and, if so, whether it has been or is likely to be used to the detriment of the defendant. *See, e.g., Upton v. State*, 257 Ark. 424, 516 S.W.2d 904 (1974); *State v. Jones*, 180 Conn. 443, 429 A.2d 936 (1980), *overruled on other grounds, State v. Powell*, 186 Conn. 547, 442 A.2d 939 (1982), *cert. denied*, 459 U.S. 838, 74 L. Ed. 2d 80 (1982); *Thompson v. State*, 246 So. 2d 760 (Fla. 1971); *Summit v. Mudd*, 679 S.W.2d 225 (Ky. 1984); *State v. Bell*, 346 So. 2d 1090 (La. 1977); *Young v. State*, 297 Md. 286, 465 A.2d 1149 (1983); *Collier v. Legakes*, 98 Nev. 307, 646 P.2d 1219 (1982); *State v. Cline*, 122 R.I. 297, 405 A.2d 1192 (1979); *State v. Miner*, 128 Vt. 55, 258 A.2d 815 (1969). *Accord United States v. Caggiano*, 660 F.2d 184 (6th Cir. 1981), *cert. denied*, 455 U.S. 945, 71 L. Ed. 2d 658 (1982).

In *State v. Cline*, the Supreme Court of Rhode Island rejected the notion that an entire prosecutor's office should be disqualified in order to avoid a mere appearance of impropriety. *Cline*, 122 R.I. at 322, 405 A.2d at 1205. That Court took note of the obvious fact that even if the entire prosecutor's office should be disqualified and special counsel appointed to prosecute, it still "would be necessary to trust to the integrity of the lawyers in question to obey that which would have been their obligation in any event

to avoid the revealing of confidences made by the client to his former attorney." *Id.*, 405 A.2d at 1206. More directly to the point, the Rhode Island Court took the position that:

> [T]ransferring responsibility from one office to another, or the appointment of a special prosecutor, provides a purported remedy which is more cosmetic than substantial. Essentially the question is whether defendant has been in any way prejudiced by virtue of the imparting of knowledge from his former counsel to anyone involved in his prosecution.

*Id.* at 325, 405 A.2d at 1207. We agree.

We also agree with the Supreme Court of Connecticut that a mere appearance of impropriety will not support an order disqualifying an entire prosecutor's office. *Jones*, 180 Conn. at 452-53, 429 A.2d at 941, *overruled on other grounds*, 186 Conn. 547, 442 A.2d 939. We share the view of that Court that:

> It can be argued that withdrawal of the entire law firm, here the entire state's attorney's office, when the slightest chance of betrayal of confidential communications exists might better preserve the integrity of the judicial system. But a rule this broad would result in many unnecessary withdrawals, limit mobility in the legal profession, and restrict the state in the assignment of counsel where no breach of confidentiality has in fact occurred.

*Id.* at 456-57, 429 A.2d at 942-43. More importantly, in states such as ours, District Attorneys are elected officials whose duty to prosecute is expressly mandated by constitutional provisions. Court orders requiring them to withdraw absent an actual conflict of interests unnecessarily interfere with their performance of that constitutionally mandated duty. Such orders unnecessarily disrupt the system established by our Constitution.

Many courts have recognized that: "There is, of course, quite a difference in the relationship between law partners and associates in private law firms and lawyers representing their government." *United States v. Caggiano*, 660 F.2d 184, 190 (6th Cir. 1981), *cert. denied*, 455 U.S. 945, 71 L. Ed. 2d 658 (1982). Thus, in *United States v. Goot*, 894 F.2d 231 (7th Cir. 1990), *cert. denied*, --- U.S. ---, 112 L. Ed. 2d 22 (1990), the Court declined to apply any per se rule requiring disqualification of the United States Attorney's Office where the United States Attorney had previously represented

the defendant. The defendant had moved to disqualify the entire United States Attorney's Office from the prosecution of his case on the grounds that otherwise his fifth amendment right to due process and sixth amendment right to counsel would be violated. Faced with evidence that the United States Attorney had recused himself from the case, had appointed one of his assistants as "Acting United States Attorney" with regard to the case and had not communicated any confidential information to the assistant, the United States District Court concluded that disqualification of the entire United States Attorney's Office would not be proper.

On appeal, the United States Court of Appeals for the Seventh Circuit noted that: "In deciding questions of disqualification we balance the respective interests of the defendant, the government, and the public." *Id.* at 236. Specifically, that Court reasoned that:

> [The defendant] has a fundamental interest in his fifth amendment right not to be deprived of liberty without due process of law and in his sixth amendment right to counsel. The government has an interest in fulfilling its public protection function. To that end the convenience of utilizing the office situated in the *locus criminis* is not lightly to be discarded. Furthermore, the government has a legitimate interest in attracting qualified lawyers to its service.

*Id.* (citations omitted). Upon balancing those interests, the Court concluded that the measures employed by the government had sufficiently screened the United States Attorney from the prosecution of the defendant "so that each and every particular interest of [the defendant], the government, and the public was met." *Id.* at 237. Accordingly, the Court affirmed the District Court's denial of the defendant's motion to disqualify the entire United States Attorney's Office from the prosecution of that case.

Contrary to the defendant's arguments, we conclude that the balancing test applied in *Goot* satisfies the requirements of the fifth and sixth amendments to the Constitution of the United States and article I, sections 19 and 23 of the Constitution of North Carolina. Further, that balancing test is constitutionally preferable to the per se disqualification rule applied in some jurisdictions which results in unnecessary interference with constitutional officers in the performance of their constitutional and statutory duties.

STATE v. CAMACHO

[329 N.C. 589 (1991)]

We agree with the conclusion reached in a well-researched and clearly reasoned decision by the highest court of Maryland that:

> [T]he mere appearance of impropriety is not of itself sufficient to warrant disqualification of an entire State's Attorney's office, based upon one member's prior representation of a defendant presently under prosecution. Where disqualification is sought, the trial court must make inquiry as to whether the defendant's former counsel participated in the prosecution of the case or divulged any confidential information to other prosecutors.

*Young v. State*, 297 Md. at 297, 465 A.2d at 1155. We hold that a prosecutor may not be disqualified from prosecuting a criminal action in this State unless and until the trial court determines that an actual conflict of interests exists. In this context, an "actual conflict of interests" is demonstrated where a District Attorney or a member of his or her staff has previously represented the defendant with regard to the charges to be prosecuted and, as a result of that former attorney-client relationship, the prosecution has obtained confidential information which may be used to the defendant's detriment at trial. Even then, however, any order of disqualification ordinarily should be directed only to individual prosecutors who have been exposed to such information. *See generally Goot*, 894 F.2d 231.

We recognize that a reasonable argument can be made to the effect that a prosecutor's conflicts of interests work to the detriment of the prosecution and not to the detriment of defendants. *Cf., Holloway v. Arkansas*, 435 U.S. 475, 490, 55 L. Ed. 2d 426, 438 (1978) (where attorney in a criminal case represents those with conflicting interests and attempts to refrain from using information gathered in confidence, "the evil . . . is in what the advocate finds himself compelled to *refrain* from doing. . . ."). We further recognize that a strong argument has been put forward to the effect that trial courts under systems such as ours do not have the authority to disqualify a District Attorney from performing his constitutional duty to prosecute criminal cases, as to do so amounts to removing an elected constitutional officer from office without following the constitutionally and statutorily required procedures for doing so. *E.g., State ex rel. Eidson v. Edwards*, 793 S.W. 2d 1 (Tex. Crim. App. 1990) (en banc) (White, J., in an opinion for the Court expressing the view of 4 of 9 Judges). Nevertheless,

we conclude that where a trial court has found "an actual conflict of interests" as that term has been defined in this opinion, the trial court may disqualify the prosecutor having the conflict from participating in the prosecution of a defendant's case and order that prosecutor not to reveal information which might be harmful to the defendant.

All of the evidence before the trial court in the present case tended to show, however, that no actual conflict of interests existed on the part of any member of the District Attorney's Office, and the trial court's order clearly reflects that it found that no such conflict existed. Therefore, the trial court exceeded its authority, based on the evidence before it at the time it considered the defendant's motion, by ordering that the District Attorney's Office withdraw from the prosecution of the charges against the defendant.

IV.

We are confident that the trial court acted with the noblest of motives when it entered its order in this case. However, no matter how laudable the objective, a court may not issue orders which exceed its lawful authority. *State v. Gravette*, 327 N.C. 114, 393 S.E.2d 865 (1990).

For the foregoing reasons, we conclude that the trial court exceeded its authority by ordering the District Attorney's Office to withdraw from the prosecution of the defendant because an appearance of impropriety might arise at some future time. Further, the trial court exceeded its authority by ordering the District Attorney to request that the Attorney General's Office undertake the prosecution and by ordering the Attorney General's Office to assume responsibility for the prosecution of the case against the defendant. Accordingly, the order of the trial court is vacated, and this case is remanded to the Superior Court, Mecklenburg County, for further proceedings not inconsistent with this opinion.

Vacated and remanded.