LARRY CRAIG HODGIN AND DELORIS H. HODGIN, JOHN W. DESTEFANO AND
CATHERINE DESTEFANO, AND JED PATTON, Plaintiffs v. JEFFREY N.
BRIGHTON AND CARRIE L. BRIGHTON, Defendants

No. COA08-347

(Filed 7 April 2009)

**Deeds— restrictive covenants—construction of attached
garage**

The trial court did not err by granting summary judgment in
favor of defendants in a case seeking to enforce a subdivision's
restrictive covenants after defendants constructed a garage
attached to their residence that allegedly violated the side yard
setback requirements contained in the restrictions because: (1)
the language of the pertinent restrictions expressly excepted
attached garages from the setback restrictions applicable to
other outbuildings, and nothing in the restrictions suggested that
an attached garage was subject to the twenty-five feet setback for
the primary residence; and (2) the Court of Appeals will not
rewrite the restrictions nor go back and examine extrinsic evi-
dence to interpret them.

Judge STROUD concurring.

Appeal by plaintiffs from order entered 4 January 2008 by Judge
Nathaniel J. Poovey in Mecklenburg County Superior Court. Heard in
the Court of Appeals 24 September 2008.

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Hatcher
Kincheloe, Harmony W. Taylor, and Gerald A. Stein, II, for
plaintiff-appellants.*

*James, McElroy & Diehl, P.A., by Gary S. Hemric, Adam L.
Ross, and Sarah M. Brady, for defendant-appellees.*

STEELMAN, Judge.

Where a Restriction Agreement is clear and unambiguous, this
Court will not re-write the restrictions nor go back and examine
extrinsic evidence to interpret the restrictions.

## I. Factual and Procedural Background

Jeffrey N. and Carrie L. Brighton (defendants) own Lot 18, Block
4 of Tuckaway Park Subdivision located in Charlotte, North Carolina.

A plat of the Subdivision is recorded in the office of the Register of Deeds for Mecklenburg County in Deed Book 1580 at page 511. The plaintiffs also own property in the Subdivision; Larry Craig and Deloris H. Hodgin's (Hodgins) property adjoins defendants' property.

Tuckaway Park is a restricted residential subdivision. A Restriction Agreement dated 29 March 1954 is recorded in Deed Book 1673 at page 553 of the Mecklenburg County Register. An amendment to the restrictions was filed 20 September 1971 in Deed Book 3348 at page 539. In pertinent part, the restrictions provide:

A. Residence. No residence may be located nearer to the front property line than fifty (50') feet, or nearer to an inside property line than twenty-five (25') feet; except that as to Lot 4, Block 2, and Lot 4, Block 4, no residence may be located nearer the front property line on Carmel Club Drive than twenty-five (25') feet; and, as to lots 6 and 7, Block 3, no residence may be located nearer the front property line than forty (40') feet.

B. Outbuildings. No outbuilding, except a garage attached to the main residence may be located nearer to the front property line than One Hundred (100') feet, or nearer to an inside property line than seven (7') feet.

Defendants constructed a garage, attached to their residence, on the side of their lot that adjoins the Hodgins' property. On 16 February 2007, plaintiffs Hodgin filed a complaint against defendants asserting that the structure violated the side yard setback requirements contained in the restrictions. By order dated 5 July 2007, plaintiffs were allowed to amend their complaint. The amended complaint asserted that defendants had violated the restrictive covenants for the Subdivision. Plaintiffs requested that the trial court permanently enjoin defendants "from violating any of the restrictions set forth in the Restriction Agreement[,]" and "enter an Order requiring the Defendants to remove any improvements on Defendants' property that are in violation of the Restrictions[.]"

Defendants' answer asserted a number of affirmative defenses including that the residences of the plaintiffs violated the Restriction Agreement and that they were barred from enforcing the restrictions based upon unclean hands, breach of contract, waiver, estoppel, acquiescence, and abandonment. Defendants further asserted a contingent counterclaim based upon front setback violations of the plaintiffs' residences.

On 29 October 2007, defendants served a Motion for Partial Summary Judgment as to "Plaintiffs' claim for a permanent injunction." Both parties submitted affidavits in support of and in opposition to the motion for summary judgment.

On 4 January 2008, the trial court entered an Order Granting Partial Summary Judgment. Although the order is captioned "Order Granting Partial Summary Judgment," the trial court granted summary judgment as to all of plaintiffs' claims and dismissed plaintiffs' action.

Plaintiffs appeal.

## II. Standard of Review

The appellate courts of this state review the granting of a motion for summary judgment based upon whether there was a material issue of fact and whether one of the parties was entitled to judgment as a matter of law. *Coastal Plains Utilities., Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 340, 601 S.E.2d 915, 920 (2004). It is based upon the pleadings, affidavits, and depositions presented to the court. *Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 445, 447, 579 S.E.2d 505, 507 (2003).

## III. Ambiguity of the Restriction Agreement

In their first argument, plaintiffs contend the restrictions are ambiguous as to limits on outbuildings; therefore, "[b]y the sheer definition of ambiguity, the parties to this Restriction Agreement have brought forth a genuine issue of material fact as to the meaning and intent of the Restriction Agreement . . . ." We disagree.

Plaintiffs filed affidavits with the court asserting that their interpretation of the restrictions was that the garage could be located no closer than twenty-five feet from a side lot line. They further argue that the conflict between the interpretation set forth in their affidavits and the defendants' affidavits creates a material issue of fact making the granting of summary judgment improper.

Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms.

*Hemric v. Groce*, 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (2005) (quoting *Martin v. Martin*, 26 N.C. App. 506, 508, 216 S.E.2d 456, 457-58 (1975)), *cert. denied*, 359 N.C. 631, 616 S.E.2d 234 (2005). "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) (citing *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624-25 (1973)). If the language is clear and only one reasonable interpretation exists, "the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 300, 524 S.E.2d 558, 563 (2000) (quoting *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978)).

We hold that the language of the restrictions is clear and unambiguous. Plaintiffs argue the terms of the restrictions are ambiguous, and an attached garage is not an "outbuilding" but is a "residence." They contend that once a garage is attached to the main residence, it becomes part of the residence and is therefore subject to the twenty-five feet setback requirement.

The restrictions do not define either "outbuilding" or "garage;" however, "garage" is mentioned in Paragraph III(B), under the heading Outbuildings, "No garage may provide space for more than three (3) automobiles."

The use of outbuildings is restricted by paragraph II(C) of the restrictions:

C. Outbuildings. No outbuilding may be erected on any lot other than such as is customarily incidental to residential use. No outbuilding, trailer, or temporary, or incomplete structure, may be used as a residence, except that the family of a servant of the family occupying the main residence may occupy a permanent outbuilding.

The restrictions further state in paragraph IV(B), under the heading Outbuildings, "No outbuilding, *except a garage* attached to the main residence may be located . . . ." (emphasis added). This language expressly excepts attached garages from the setback restrictions applicable to other outbuildings. Nothing in the restrictions suggests that an attached garage is subject to the twenty-five feet setback for the primary residence. Therefore, we conclude that the restrictions

are clear and unambiguous, and we will not re-write the restrictions nor go back and examine extrinsic evidence to interpret them. Because we conclude that the restrictions are unambiguous, we do not reach plaintiffs' remaining arguments.

AFFIRMED.

Judge JACKSON concurs.

Judge STROUD concurs in separate opinion.

STROUD, Judge concurring in separate opinion.

While I concur with the mandate of the majority opinion, I write separately to address other issues the majority opinion has chosen not to address. I reiterate, as the majority opinion notes, that in plaintiffs' amended complaint plaintiffs requested that the trial court (1) permanently enjoin the defendants "from violating any of the restrictions set forth in the Restriction Agreement[,] and (2) "enter an Order requiring the Defendants to remove any improvements on Defendants' property that are in violation of the Restrictions[.]" Furthermore, on or about 6 August 2007, defendants filed an answer to plaintiffs' amended complaint which included counterclaims contingent on certain determinations of the trial court. Defendants' 6 August 2007 answer reads, "In the event that the Court finds and concludes that the Restriction Agreement and the setback restrictions contained therein remains in full force and effect, and that the Brightons are *not* in violation of that Agreement, the Brightons assert the following Counterclaims against the Hodgins and the Destefanos . . . ."[1] (Emphasis added.)

On 4 January 2008, the trial court entered its order, entitled "ORDER GRANTING PARTIAL SUMMARY JUDGMENT[.]" The order stated in pertinent part as follows:

[f]rom a review of the Complaint, it appears that the only claim for relief by the Plaintiffs is one for an Order enjoining Defendants from building an addition on to their house. Although denominated as a Motion for Partial Summary Judgment on the claim for a "permanent injunction," in fact, the Motion is one for

---

1. There is some indication in the record that the word "not" was a typographical error, so that the condition for the counterclaim should have read "that the Brightons *are* in violation of that Agreement . . .[;]" (emphasis added), if this is correct, the condition for the counterclaim was not fulfilled.

Summary Judgment on the Complaint of the Plaintiffs against Defendants. . . .

The trial court thereafter granted summary judgment for defendants as to plaintiffs' claims and dismissed plaintiffs' complaint in its entirety.

The trial court order did not specifically address the contingencies in defendants' counterclaims, and it is unclear from the record whether defendants currently have pending counterclaims. The conditions stated for defendants' counterclaims were that "the [c]ourt finds and concludes [(1)] that the Restriction Agreement and the setback restrictions remain in full force and effect, and [(2)] that the [defendants'] are not in violation of that Agreement[.]" These conditions were fulfilled, which would indicate that the counterclaims were active based upon the order granting "partial" summary judgment.

The trial court order reads, "There is no just reason for delay in entry of this Judgment. Accordingly, this Judgment is a final Judgment on the merits of the Complaint." This language is similar to the language of North Carolina Rule of Civil Procedure 54(b) for certification by the trial court for immediate appeal of an interlocutory order. *See* N.C. Gen. Stat. § 1A-1, Rule 54(b). Therefore, both the title of the order, "ORDER GRANTING PARTIAL SUMMARY JUDGMENT[,]" and the order's language which seems to mirror "certification" language, *see id.*, could be read as an indication that the trial court did not consider its order a final order which disposed of all claims as to all parties, so that certification of this interlocutory order was necessary for this Court to review the issues which were determined. *See id.* However, no party has argued that this appeal is interlocutory, and the majority opinion has addressed this appeal on its merits as a final judgment which dismissed the case in its entirety as to all claims and parties.

The trial court also effectively converted defendants' motion for partial summary judgment into a motion for summary judgment and dismissed plaintiffs' entire complaint because "it appears that the only claim for relief by the Plaintiffs is one for an Order enjoining Defendants from building an addition on to their house." We note that defendants contributed to the trial court's misconception as the last sentence in their 29 October 2007 motion for partial summary judgment is, "WHEREFORE, the Brightons respectfully request that the Court enter an Order granting them partial summary judg-

**HODGIN v. BRIGHTON**

[196 N.C. App. 126 (2009)]

ment on Plaintiffs' *sole claim for relief-permanent injunction.*"
(Emphasis added.)

However, plaintiffs' amended complaint also clearly requests "an
Order requiring the Defendants to remove any improvements on
Defendants' property that are in violation of the Restrictions." There-
fore, the trial court order erred in stating that the plaintiff had only
brought forth one claim for relief. Plaintiffs requested both (1) injunc-
tive relief to prevent defendants from continuing construction in the
future and (2) an order requiring defendants to remove the portion of
the construction that had already been done. Plaintiffs' suit included
both future relief, an injunction prohibiting future violations, as well
as relief for past actions of defendants, removal of construction
already done. It is true that the two claims for relief arise out of the
same legal theory, violation of the Restriction Agreement, but there
are differences between the remedies of equitable, injunctive relief to
prevent future violations and legal relief to address a past violation.
In addition, as noted above, defendants had raised possible counter-
claims which are not clearly addressed in the record.

The majority has assumed that the trial court's order was in fact
a final order which disposed of all claims by all parties, and this
assumption is probably correct, but I prefer not to base an opinion
upon assumptions. To the extent that these assumptions are correct,
I agree entirely with the majority's analysis of the substantive issues,
and for this reason I concur in the result. I therefore write separately
to state my concerns regarding the lack of clarity in the trial court's
order and in the record and to admonish the trial court to take care
to address clearly each pending claim of each party.