NO. COA13-808

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

SRS ARLINGTON OFFICES 1, LLC,
SRS ARLINGTON OFFICES 2, LLC,
SRS ARLINGTON OFFICES 3, LLC,
SRS ARLINGTON OFFICES 4, LLC,
SRS ARLINGTON OFFICES 5, LLC,
SRS ARLINGTON OFFICES 6, LLC,
SRS ARLINGTON OFFICES 7, LLC,
SRS ARLINGTON OFFICES 8, LLC,
SRS ARLINGTON OFFICES 9, LLC,
SRS ARLINGTON OFFICES 10, LLC,
SRS ARLINGTON OFFICES 11, LLC,
SRS ARLINGTON OFFICES 12, LLC, and
SRS ARLINGTON OFFICES, LLC,
        Plaintiffs,

        v.                              Mecklenburg County
                                        No. 10 CVS 24078
ARLINGTON CONDOMINIUM OWNERS
ASSOCIATION, INC. and ARLINGTON
COMMERCIAL HOLDINGS, LLC, and
JAMES J. GROSS,
        Defendants.


        Cross-appeals by defendants from order entered 15 February

2013 by Judge F. Lane Williamson in Mecklenburg County Superior

Court.  Heard in the Court of Appeals 22 January 2014.


        *Katten Muchin Rosenman LLP, by Richard L. Farley, Rebecca*
        *K. Lindahl, and Meghan D. Engle, for defendant-appellee*
        *Arlington Condominium Owners Association, Inc.*

        *Templeton & Raynor, P.A., by Kenneth R. Raynor, for*
        *defendant-appellants Arlington Commercial Holdings, LLC,*
        *and James J. Gross.*

BRYANT, Judge.

A homeowners' association has standing to bring a claim on behalf of its members. A claim for unjust enrichment/*quantum meruit* is a claim for restitution which seeks to force a party to disgorge its ill-gotten profits. Where a party brings claims for restitution, the doctrine of election of remedies is not applicable. Summary judgment as to a claim is appropriate where a party has abandoned a claim.

The Arlington Condominium, completed on 28 January 2003, is comprised of three structures: a multi-level parking garage, a residential condominium tower, and a commercial building housing retail shops and offices. A second, separate three-story office building stands adjacent to the Arlington Condominium; both buildings share the multi-level parking garage. Defendant-appellant Arlington Commercial Holdings, LLC ("ACH"), currently owns the commercial building that is part of the Arlington Condominium. ACH also previously owned the separate three-story office building until it was sold to plaintiffs SRS Arlington Office, 1, LLC, *et al*. ("SRS"), in 2008.

The residential tower is maintained by defendant-appellee Arlington Condominium Owners Association, Inc. ("ACO"). ACO,

acting in the usual manner of a homeowners' association, collects dues and pays for the common expenses of the residential tower which includes maintenance of the garage. ACO also provides services including garage and common area maintenance, landscaping, and utilities to both of the commercial office buildings.

When ACH sold the separate three-story office building to SRS in 2008, SRS entered into a service agreement whereby ACH would provide services such as building maintenance, utilities, etc., to SRS. Also in 2008, SRS and ACH entered into a parking lease which permitted SRS limited use of certain spaces within the multi-level parking garage; ACO was not a party to either agreement. From 2008 to 2011, ACH received payment pursuant to the parking lease and services agreement with SRS for maintenance of the garage and common areas, landscaping, utilities, etc. However, the services, including maintenance of the garage and other areas, were actually provided by ACO, and ACO never received compensation from ACH or SRS.

In May 2010, SRS filed a complaint seeking determination of the validity and enforcement of the parking garage lease between SRS and ACH. Thereafter, SRS filed an amended complaint seeking enforcement of the services and utilities agreement between SRS

and ACH, in addition to enforcement of the parking garage lease. SRS also filed a trespass upon easement claim against ACO.

ACO asserted counterclaims against SRS for declaratory judgment, *quantum meruit*, and trespass, and asserted cross-claims against ACH for *quantum meruit* in the alternative. ACO also filed a motion for summary judgment against SRS. ACO then amended its complaint, counterclaims, and cross-claims, adding James J. Gross ("Gross") as a cross-defendant, and asserting counterclaims for constructive fraud and breach of fiduciary duty against Gross.[1]

On 22 November 2011, SRS and ACO entered into a settlement agreement which "settled all claims" between these two parties. The settlement agreement was enforced by order of the trial court entered 22 August 2012. Meanwhile, both ACH and ACO filed motions for summary judgment against each other.

On 29 October 2012, the trial court heard arguments concerning ACO's and ACH's motions for summary judgment. In an order issued 15 February 2013, the trial court granted Gross's motion for summary judgment as to punitive damages but denied

---

[1] James Gross was the developer of the Arlington Condominium and three-story office building, member and manager of ACH, and president of ACO's board of directors until 2008. Gross negotiated the sale of the three-story office building on behalf of ACH in June 2008.

summary judgment as to all remaining claims. The trial court granted ACO's motion for summary judgment dismissing all of ACH's claims except claim five regarding ACO's parking garage easement which was denied in part and granted in part. The trial court, after concluding that ACH was unjustly enriched due to payments received under the services and utilities agreement, and that Gross breached his fiduciary duty to ACO by causing SRS and ACH to enter into the agreement, entered judgment against ACH and Gross, jointly and severally, for $101,544.50. ACO, ACH, and Gross appeal.[2]

_____

On appeal, ACH alleges the trial court erred in granting summary judgment to ACO because: (I) ACO lacked standing to bring a claim for monetary damages; (II) ACO failed to demonstrate any damages; and (III) ACO's election of remedies against SRS barred ACO's subsequent claims against ACH. ACH further argues that (IV) the trial court erred by not reducing ACO's judgment. On cross-appeal, ACO argues that the trial court erred in granting summary judgment to Gross as to punitive damages.

*ACH and Gross's Appeal*

---

[2] SRS is not a party to this appeal.

*I.*

ACH[3] argues the trial court erred in granting summary judgment to ACO because ACO lacked standing to bring a claim for monetary damages on behalf of its members. We disagree.

As all claims on appeal presented by ACO and ACH concern the trial court's granting or denial of motions for summary judgment, this Court reviews a motion for summary judgment *de novo*. *See Falk Integrated Techs., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 573—74 (1999) (citations omitted). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

"A lack of standing may be challenged by motion to dismiss for failure to state a claim upon which relief may be granted." *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000) (citation omitted). "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002)

---

[3] For ease of reading we use ACH to represent the joint appeal of ACH and Gross.

(citations omitted).  To have standing, a party must be a "real party in interest."  *See Energy Investors Fund*, 351 N.C. at 337, 525 S.E.2d at 445.

In its argument, ACH specifically contends that ACO lacks standing because ACO has not been harmed by the actions of ACH and, therefore, the condominium residents, rather than ACO, are the real parties in interest.  An association like ACO has representational standing for its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 130, 388 S.E.2d 538, 555 (1990) (citation omitted).  North Carolina General Statutes, section 47C-3-102, provides that a condominium owner's association may "[i]nstitute, defend, or intervene in its own name in litigation or administrative proceedings on matters affecting the condominium[.]"  N.C. Gen. Stat. § 47C-3-102(a)(4) (2013).  Moreover, this Court has held that a property owner's association has standing to sue where the association's inability to collect assessments harmed its ability to carry out its duties as set forth by its declaration

of covenants. *See Indian Rock Ass'n, Inc. v. Ball*, 167 N.C. App. 648, 606 S.E.2d 179 (2004); *see also Federal Point Yacht Club Ass'n, Inc. v. Moore*, ___ N.C. App. ___, ___ S.E.2d ___ (April 1, 2014) (No. COA13-681) (holding that a homeowner's association had standing as a corporate entity to bring suit against a defendant who repeatedly violated the association's covenants).

Here, the evidence indicated that the services agreement between SRS and ACH harmed ACO by depriving ACO of payment for services which ACO provided to SRS. As such, the loss of payment for services rendered has injured ACO and, thus, permits standing. Furthermore, we note that ACO has standing pursuant to N.C.G.S. § 47C-3-102(a)(4)[4] as ACO is defending matters affecting its condominiums. ACH's argument as to standing is overruled.

*II.*

ACH next argues the trial court erred in awarding summary judgment to ACO on ACO's claim for monetary damages because ACO failed to demonstrate damages. We disagree.

In its motion for summary judgment, ACO stated that:

---

[4] "Unless the declaration expressly provides to the contrary, the [homeowners] association, even if unincorporated, may: . . . [i]nstitute, defend, or intervene in its own name in litigation or administrative proceedings on matters affecting the condominium[.]" N.C.G.S. § 47C-3-102(a)(4) (2013).

4. [ACO] provided, and ACH has accepted, services and utilities to the office building that is adjacent to the Condominium (the "Office Building") nongratuitously and without payment, and SRS has been unjustly enriched thereby[.]

. . .

6. Gross breached a fiduciary duty to the [condominium] unit owners and engaged in self-dealing during his term as President and member of the board of directors of [ACO].

The trial court, in its conclusions of law regarding ACO's motion for summary judgment, noted the following:

6. There is no dispute of material fact with respect to [ACO's] Second Crossclaim against ACH or its Fifth Crossclaim against Gross, and the Court finds as a matter of law that (a) ACH was unjustly enriched by reason of the payments received by it under the Services and Utilities Agreement and (b) Gross violated his fiduciary duties to [ACO] by causing SRS and ACH to enter into the Services and Utilities Agreement, and summary judgment in favor of [ACO], as non-moving party, is appropriate. Accordingly, the Court finds that [ACO] is entitled to judgment as a matter of law on its Second Claim – Quantum Meruit claim against ACH and on its Fifth Claim – Breach of Fiduciary Duty against Gross in the amount of $101,544.50, which sum was stipulated to by the parties as the total amount of payments that ACH received from [SRS] from the period June 4, 2008 to December 31, 2011, without offset.

ACH contends the trial court erred in granting summary judgment on ACO's claims for monetary relief because ACO was not a party to the services agreement or parking deck lease between SRS and ACH and, therefore, ACO cannot demonstrate damages. We note for the record that the monetary relief granted by the trial court was based not on proof of compensatory damages but restitution based on unjust enrichment. Therefore, we do not further address ACH's arguments that attempt to challenge an award of compensatory damages.

"*Quantum meruit* is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment. It operates as an equitable remedy . . . ." *Paul L. Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414—15 (1998) (citations omitted).

> [R]estitution . . . is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep. The principle of restitution is to deprive the defendant of benefits that in equity and good conscience he ought not to keep . . . even though plaintiff may have suffered no demonstrable losses.

*Booher v. Frue*, 86 N.C. App. 390, 393—94, 358 S.E.2d 127, 129 (1987) (citations and quotations omitted).

Here, the court found that the sum of $101,544.50 was stipulated by the parties to be the total amount of payments ACH received from SRS from 4 June 2008 to 31 December 2011. Therefore, because ACH was unjustly enriched by the payments it received from SRS pursuant to the services and utilities agreement, the trial court did not err in awarding restitution in the amount of $101,544.50 based on *quantum meruit*. ACH's argument is overruled.

### III.

ACH next contends the trial court erred in granting ACO's motion for summary judgment because ACO's settlement agreement with SRS barred ACO's subsequent claims against ACH based on the doctrine of election of remedies. We disagree.

> The whole doctrine of election [of remedies] is based on the theory that there are inconsistent rights or remedies of which a party may avail himself, and a choice of one is held to be an election not to pursue the other. But the principle does not apply to co-existing and consistent remedies.

*Richardson v. Richardson*, 261 N.C. 521, 530, 135 S.E.2d 532, 539 (1964) (citation and quotations omitted).

> A plaintiff is deemed to have made an election of remedies, and therefore estopped from suing a second defendant, only if he has sought and obtained final judgment against a first defendant and the remedy granted in the first judgment is repugnant

> or inconsistent with the remedy sought in the second action. The purpose of the doctrine of election of remedies is to prevent more than one redress for a single wrong. One is held to have made an election of remedies when one chooses with knowledge of the facts between two inconsistent remedial rights. The doctrine does not apply to co-existing and consistent remedies.

*Triangle Park Chiropractic v. Battaglia*, 139 N.C. App. 201, 203—04, 532 S.E.2d 833, 835 (2000) (citations and quotation omitted).

Here, ACO sought consistent remedies, based on *quantum meruit*, to force all parties – SRS, ACH, and Gross – to disgorge ill-gotten profits. On 22 November 2011, ACO settled its claims against SRS through a settlement agreement which was enforced by order of the trial court. The agreement does not appear to address compensation for services provided by ACO, as ACH and Gross assert. Instead, the settlement agreement between ACO and SRS appeared to be a global settlement as it required SRS to pay ACO a lump sum of $125,000.00. The settlement agreement also set forth provisions for future payments by SRS to ACO for utilities, services, and parking expenses, among many other terms. All claims between ACO and SRS were extinguished by the settlement. Thereafter, ACO moved for summary judgment against ACH and Gross, alleging that ACH had been unjustly enriched and

that Gross had breached his fiduciary duty by engaging in self-dealing while serving as president of ACO's board of directors.

In a 30 October 2012 hearing, the trial court found that ACH had been unjustly enriched, and that "under these circumstances [it] should find as a matter of law that [Gross] was . . . not in addition liable, but simply jointly and severally liable with ACH to the extent of those damages." The damages referred to was the $101,544.50 stipulated by the parties to be the amount of payments received by ACH from SRS under the services agreement from 4 June 2008 to 31 December 2011.

ACH's contention that ACO's claim is barred by the doctrine of election of remedies is without merit, as ACO's claims sought restitution based on *quantum meruit*, not compensatory damages. "The term '*quantum meruit*' can denote both a method of measuring recovery in restitution and a substantive theory of relief in restitution." *Paul A. Whitfield, P.A. v. Gilchrist*, 126 N.C. App. 241, 244—45, 485 S.E.2d 61, 63 (1997), *rev'd on other grounds*, 348 N.C. 39, 497 S.E.2d 412.

> Restitution recovery and damages recovery are based on entirely different theories. [T]he main purpose of the damages award is some rough kind of compensation for the plaintiff's loss. This is not the case with every kind of money award, only with

> the damages award. In this respect, restitution stands in direct contrast to the damages action. The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep. A plaintiff may receive a windfall in some cases, but this is acceptable in order to avoid any unjust enrichment on the defendant's part. The principle of restitution is to deprive the defendant of benefits that in equity and good conscience he ought not to keep . . . even though plaintiff may have suffered no demonstrable losses.

*Booher*, 86 N.C. App. at 393—94, 358 S.E.2d at 129 (citations and quotations omitted).

Here, ACO brought a claim for *quantum meruit* against ACH and Gross, alleging that ACH accepted non-gratuitous services from ACO without payment which unjustly enriched SRS. As such, ACO's claim was for restitution, rather than compensation; ACO sought to force ACH to "disgorge benefits that it would be unjust for [ACH] to keep." Therefore, ACO has neither sought nor obtained an impermissible double recovery based on its settlement agreement with SRS, as ACO has consistently sought restitution by seeking to force all parties to disgorge "ill-gotten profits" rather than compensation.

The trial court awarded summary judgment to ACO, finding ACH and Gross to be jointly and severally liable for the amount

of $101,544.50.  This amount represented the benefits received by ACH and Gross based on their actions in this case. Therefore, the trial court did not err in awarding summary judgment to ACO on its claim against ACH and Gross. Accordingly, we need not reach ACH's fourth argument on appeal.

*ACO's Cross-Appeal*

On cross-appeal, ACO argues that the trial court erred in denying its motion for summary judgment as to Gross for punitive damages. We disagree.

As we review a motion for summary judgment *de novo*, we must look to see whether there is truly no genuine issue of material fact.  *See* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013) (holding that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.").

In the 15 February 2013 hearing, counsel for ACO raised the issue of punitive damages against Gross to the trial court:

> I want to address punitive damages.  Believe me, if I thought the evidence met the standard for punitive damages in Chapter 1B, I would have put that in the order, too. I'm not asking you to enter an award of punitive damages.

. . .

> We are not asking for punitive damages. I wish we could. Because in my opinion, he needs to be punished, but that's not going to happen.

After ACH asked the trial court to note on its order that "[ACO] has announced we're waiving the claim for your damages. I'd like that in the order because I think that's important[,]" ACO responded that "I'm not saying we're waiving it. I'm saying the evidence doesn't --." The trial court then found as a matter of law that ACO was not entitled to punitive damages against Gross:

> [T]he Court also finds that there is no dispute of material fact with respect to [ACO's] claim for punitive damages against Gross and the Court finds, as a matter of law, that Gross is entitled to summary judgment in his favor with respect to the claim for punitive damages pursuant to Chapter 1D of the North Carolina General Statutes.

Where a party informs the trial court that it does not intend to pursue a particular claim, that claim is deemed abandoned. *See Shroyer v. Cnty. of Mecklenburg*, 154 N.C. App. 163, 168—69, 571 S.E.2d 849, 852 (2002) (holding that the plaintiffs had expressly abandoned a claim for negligence where the plaintiffs made statements to the trial court indicating that although the plaintiffs had originally brought claims for

breach of contract and negligence against the defendant, "only the breach of contract claim[] will be tried in this case. Plaintiffs have elected not to pursue the negligence claim[] against [defendant].").

We agree with the trial court's conclusion that ACO waived its claim for punitive damages, as ACO clearly stated to the trial court several times that "[ACO is] not asking for punitive damages." Further, we note that ACO acknowledged it lacked sufficient evidence to bring a claim for punitive damages, telling the trial court that "if [ACO] thought the evidence met the standard for punitive damages in Chapter 1B, [ACO] would have put that in the order, too." As such, ACO waived its claim for punitive damages. Accordingly, the trial court did not err in denying ACO's summary judgment motion as to Gross for punitive damages.

Affirmed.

Judges CALABRIA and GEER concur.