IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1308

Filed: 4 August 2020

Wake County, No. 18 CVS 3241

SHEARON FARMS TOWNHOME OWNERS ASSOCIATION II, INC., Plaintiff,

v.

SHEARON FARMS DEVELOPMENT, LLC; DAN RYAN BUILDERS–NORTH CAROLINA, LLC; ABBINGTON HEIGHTS, LLC; JELD-WEN, INC., and JELD-WEN HOLDING, INC., Defendants.

DAN RYAN BUILDERS–NORTH CAROLINA, LLC, Defendant/Third-Party Plaintiff,

v.

JP&M ENTERPRISE, INC.; JP&M ENTERPRISE, INC. d/b/a ACE VINYL SIDING; ALPHA OMEGA CONSTRUCTION GROUP OF RALEIGH, INC.; ALPHA OMEGA CONSTRUCTION GROUP OF RALEIGH, INC. d/b/a ALPHA OMEGA CONST. GROUP OF RALEIGH; BMC EAST, LLC; BMC EAST, LLC d/b/a BMC; BMC EAST, LLC f/k/a STOCK BUILDING SUPPLY, LLC d/b/a STOCK BUILDING SUPPLY; BRINLEY'S GRADING SERVICE, INC.; BRINLEY'S GRADING SERVICE, INC. d/b/a BRINLEY'S GRADING SERVICE; GMA SUPPLY INC.; GMA SUPPLY INC. f/k/a GMA SUPPLY LLC d/b/a GMA SUPPLY; LOCKLEAR ROOFING INC.; LOCKLEAR INC.; LOCKLEAR ROOFING INC. d/b/a LOCKLEAR ROOFING; LOCKLEAR INC. d/b/a LOCKLEAR ROOFING; TAYLOR'S LANDSCAPING, INC.; TAYLOR'S LANDSCAPING, INC. d/b/a TAYLOR'S LANDSCAPING INC., Third-Party Defendants.

Appeal by plaintiff from order entered 24 September 2018 by Judge Allen Baddour in Wake County Superior Court. Heard in the Court of Appeals 7 August 2019.

*Jordan Price Wall Gray Jones & Carlton PLLC, by Brian S. Edlin and H. Weldon Jones, III, for plaintiff-appellant.*

*Shumaker, Loop & Kendrick, LLP, by Frederick M. Thurman, Jr. and William H. Sturges, and The Sieving Law Firm, A.P.C., by Richard N. Sieving, for defendant-appellee JELD-WEN, Inc.*

DIETZ, Judge.

Plaintiff Shearon Farms Townhome Owners Association II, Inc. is a homeowners' association in Wake County. In early 2018, some members of the association noticed that the siding of their homes was warped and distorted and looked as if it were melting.

After investigating the damage, the association brought tort and warranty claims against JELD-WEN, Inc., a window manufacturer, alleging that the damage was the result of defective windows installed in the townhomes. The trial court dismissed the association's claims against JELD-WEN after concluding that the association lacked standing to bring those claims either on its own behalf or on behalf of its members.

We affirm the dismissal for lack of standing. As explained below, this action seeks monetary recovery for damage to the exterior surfaces of townhomes owned by individual members of the association. Under settled standing precedent, those claims for individual money damages cannot be pursued by a homeowners' association under theories of associational standing.

Moreover, although the organizational declaration for the association obligates it to maintain and repair the exterior siding of those townhomes, that contractual

obligation applies only to upkeep resulting from "normal usage and weathering." The declaration expressly excludes maintenance or repair resulting from the sort of unexpected damage alleged in this complaint.

Accordingly, the trial court properly determined that the association lacked standing to pursue the claims alleged against JELD-WEN because it had neither associational standing nor individual standing sufficient to confer a justiciable stake in the controversy. We therefore affirm the trial court's order.

**Facts and Procedural History**

Shearon Farms Townhome Owners Association II, Inc.[1] is a non-profit homeowners' association incorporated in North Carolina. The association's members own townhomes in a community known as "Shearon Farms Townhomes II" within the Shearon Farms neighborhood in Wake County.

In early 2018, several townhome owners in the neighborhood reported to the association that the exterior siding on their townhomes was severely damaged, as if it had melted. The association investigated and determined that this damage was "due to abnormal reflections of extremely high heat from the windows on townhome units." In May 2018, Shearon Farms filed this action against various parties involved in the construction of the townhomes and against JELD-WEN, Inc., the manufacturer of the windows installed in the townhomes.

---

[1] For ease of reference, we refer to Plaintiff Shearon Farms Townhome Owners Association II, Inc. as "Shearon Farms."

JELD-WEN moved to dismiss the claims against it for lack of standing. After a hearing, the trial court granted the motion, finding a "lack of standing to pursue claims against Defendant JELD-WEN, INC. because Plaintiff is not legally entitled to assert claims pertaining to the windows and because the Plaintiff is not legally entitled to assert claims for warped, distorted, or melted siding." Shearon Farms timely appealed.

## Analysis

### I. Appealability

Before we address the merits of this appeal, we must address a challenge to this Court's jurisdiction. Shearon Farms concedes that the challenged order is not a final judgment because the order dismissed its claims against JELD-WEN but not its claims against the other defendants named in the action. *See Pratt v. Staton*, 147 N.C. App. 771, 772–73, 556 S.E.2d 621, 623 (2001).

"Ordinarily, this Court hears appeals only after entry of a final judgment that leaves nothing further to be done in the trial court." *Crite v. Bussey*, 239 N.C. App. 19, 20, 767 S.E.2d 434, 435 (2015). "The reason for this rule is to prevent fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts." *Larsen v. Black Diamond French Truffles, Inc.*, 241 N.C. App. 74, 76, 772 S.E.2d 93, 95 (2015).

There is a statutory exception to this general rule when an interlocutory order deprives the appellant of a substantial right which would be jeopardized absent immediate appellate review. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994); N.C. Gen. Stat §§ 1-277(a), 7A-27(b). Shearon Farms argues that the challenged order is immediately appealable under this "substantial rights doctrine" because there is a risk of inconsistent verdicts.

The inconsistent verdicts doctrine is a subset of the substantial rights doctrine and one that is often misunderstood. In general, there is no right to have all related claims decided in one proceeding. *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 7, 362 S.E.2d 812, 816 (1987). Thus, the risk that a litigant may be forced to endure two trials, rather than one, does not by itself implicate a substantial right, even if those separate trials involve related issues or stem from the same underlying event.

But things are different when there is a risk of "inconsistent verdicts," meaning "a risk that different fact-finders would reach irreconcilable results when examining the same factual issues a second time." *Denney v. Wardson Constr., Inc.*, 264 N.C. App. 15, 19, 824 S.E.2d 436, 439 (2019). Importantly, not all claims involving the "same factual issues" create a risk of irreconcilable results when tried separately. For example, a fact may be relevant to two separate claims for two different reasons. In that circumstance, there is no substantial right to have those fact issues decided

together. *See, e.g.*, *Hamilton v. Mortg. Info. Servs., Inc.*, 212 N.C. App. 73, 83–84, 711 S.E.2d 185, 192–93 (2011). But when the same fact is determinative of the same issue in multiple claims, there is a substantial right to have those factual issues determined by the same jury to avoid the risk that two juries decide that fact differently, leading to two judgments from the same initial lawsuit with incompatible outcomes. *Davidson v. Knauff Ins. Agency, Inc.*, 93 N.C. App. 20, 25–26, 376 S.E.2d 488, 491–92 (1989).

Here, Shearon Farms brought claims against both JELD-WEN and a group of defendants involved in the construction of the townhomes. Many of the claims against the construction defendants are unrelated to JELD-WEN's windows. But some of the claims have overlapping factual allegations. Specifically, at least some claims against both sets of defendants involve questions of whether the windows are defective and caused the alleged damage to the siding of neighboring homes. The resolution of those fact questions is potentially determinative of both the claims against JELD-WEN and certain claims against other defendants that are still pending in the trial court. Thus, we agree with Shearon Farms that it has met its burden to show that there is a risk of inconsistent verdicts. Accordingly, we hold that the challenged order affects a substantial right and is immediately appealable.

## II.  Standing

Shearon Farms challenges the trial court's grant of a motion to dismiss for lack

of standing. After reviewing the complaint and the recorded declaration attached to it, the trial court concluded as a matter of law that Shearon Farms lacked standing to pursue the negligence and warranty claims asserted against JELD-WEN:

> Defendant JELD-WEN, INC.'s Motion to Dismiss Plaintiff's Second Amended Complaint is GRANTED as a consequence of Plaintiff's lack of standing to pursue claims against Defendant JELD-WEN, INC. because Plaintiff is not legally entitled to assert claims pertaining to the windows and because the Plaintiff is not legally entitled to assert claims for warped, distorted, or melted siding.

At oral argument, Shearon Farms conceded that it understood the ruling to be one based on lack of standing. But in its briefing, Shearon Farms repeatedly refers to the standard for review of a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted. This is understandable because JELD-WEN brought its motion under Rule 12(b)(6) of the Rules of Civil Procedure, although it expressly asserted that the basis for the motion was that "Plaintiff lacks standing."

Standing is a question of "subject matter jurisdiction." *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002). As a result, a "standing argument implicates Rule 12(b)(1)" of the Rules of Civil Procedure, which governs dismissals based on lack of subject matter jurisdiction. *Id.* at 113–14, 574 S.E.2d at 51. But, to be fair, this Court also has asserted in several cases that "lack of standing may be challenged by motion to dismiss for failure to state a claim upon which relief may be granted," creating confusion in our caselaw concerning the

category of Rule 12 under which these claims should be pursued. *See SRS Arlington Offices 1, LLC v. Arlington Condo. Owners Ass'n, Inc.*, 234 N.C. App. 541, 545, 760 S.E.2d 330, 334 (2014).

Ultimately, this is irrelevant because this Court has held that a Rule 12 motion "is properly treated according to its substance rather than its label" and specifically has treated a Rule 12(b)(6) motion asserting jurisdictional issues as one brought under Rule 12(b)(1). *Williams v. New Hanover Cty. Bd. of Educ.*, 104 N.C. App. 425, 428, 409 S.E.2d 753, 755 (1991). Accordingly, in our analysis we treat the trial court's ruling as a decision on standing (as the court expressly stated in its order) and not as a dismissal on the merits for failure to state a claim on which relief can be granted.

We begin with an overview of our State's standing doctrine. "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Fed. Point Yacht Club Ass'n, Inc. v. Moore*, 233 N.C. App. 298, 303, 758 S.E.2d 1, 4 (2014). "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Neuse River Found.*, 155 N.C. App. at 113, 574 S.E.2d at 51.

Unlike the federal courts, our standing doctrine is not drawn from a constitutional "case or controversy" requirement. *Id.* at 114, 574 S.E.2d at 51–52. Instead, North Carolina's standing doctrine is grounded in the notion that a plaintiff

must have suffered some injury sufficient to confer a genuine stake in a justiciable

legal dispute:

> The rationale of the standing rule is that only one with a
> genuine grievance . . . can be trusted to battle the issue.
> The gist of the question of standing is whether the party
> seeking relief has alleged such a personal stake in the
> outcome of the controversy as to assure that concrete
> adverseness which sharpens the presentations of issues.

*Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 642, 669 S.E.2d 279, 282 (2008)

(brackets omitted).

As with other issues of subject matter jurisdiction, standing is a question of

law. *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001). Where, as

here, the trial court decided the standing question without making jurisdictional

findings of fact, we review the legal question of standing *de novo* based on the record

before the trial court. *Neuse River Found.*, 155 N.C. App. at 114, 574 S.E.2d at 51.

**A. Associational standing of Shearon Farms**

Shearon Farms first argues that it has standing under "the test articulated in

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct.

2434, 53 L.Ed.2d 383 (1977)." The principle articulated by the U.S. Supreme Court in

*Hunt*, often referred to as "associational standing," confers standing on an association

to bring suit on behalf of its members. Our Supreme Court adopted this federal test

for use in North Carolina's standing doctrine. *See River Birch Assocs. v. City of

Raleigh*, 326 N.C. 100, 129–30, 388 S.E.2d 538, 555 (1990). As the Supreme Court

explained in *River Birch*, the analysis of an associational standing claim involves three factors:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 130, 388 S.E.2d at 555.

The third factor of this test ordinarily is satisfied only when the association seeks declaratory or injunctive relief. This is so because "[w]hen an organization seeks declaratory or injunctive relief on behalf of its members, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.*

By contrast, this third factor ordinarily cannot be satisfied "where an association seeks to recover damages on behalf of its members" because individual damage claims by their nature are "not common to the entire membership, nor shared by all in equal degree." *Id.* Thus, in *River Birch*, the Supreme Court rejected a homeowners' association's claims for fraud and unfair trade practices on behalf of its members because those members did not share "the injury in equal degree" but instead had varying damages depending on how the alleged fraud and deceptive practices affected their property. *Id.* at 130–31, 388 S.E.2d at 555–56.

The same is true here. The association concedes that not all townhomes in the community suffered damage and that the damages to individual homes are not equal in degree. Thus, as with the Supreme Court in *River Birch*, "we cannot conclude that the damage claims are common to the entire membership." *Id.* at 130, 388 S.E.2d at 555.

But Shearon Farms argues that this case is distinguishable because the association is contractually obligated to repair the damage allegedly caused by JELD-WEN's windows and to then spread the costs of those repairs equally among the members of the association through assessments. Were that true, this would present a more difficult question of associational standing. But Shearon Farms is not contractually obligated to repair the damage to individual homeowners' property alleged in the complaint. The recorded declaration under which Shearon Farms contends that this contractual duty arises (and which Shearon Farms attached to its complaint) refutes this argument.

To be sure, as Shearon Farms contends, Article VIII of the declaration, in a section titled "Exterior Maintenance," imposes a contractual obligation on Shearon Farms to maintain and repair the exterior building surfaces of the individual townhomes:

> Section 1. <u>Exterior Maintenance by Association</u>. In addition to maintenance of the Townhome Common Elements, *the Association shall provide exterior maintenance upon each Living Unit which is subject to*

> *assessment hereunder, as follows*: paint, repair, replace and care for all roofs, gutters, downspouts, *exterior building surfaces*, trees, shrubs, grass, walks, mailboxes, fences installed by Declarant or approved by the Association, exterior post lights (excluding electricity therefor), and other exterior improvements.

(Emphasis added). But Article VIII of the declaration also includes another section that further defines the type of maintenance for which Shearon Farms is responsible and expressly excludes damages not caused by "normal usage and weathering":

> Section 4. <u>Casualty Loss Not Included</u>. Maintenance and repairs under this Article *arise from normal usage and weathering* and do not include maintenance and repairs made necessary by fire or other casualty *or damage*.

(Emphasis added).

We interpret this language in the declaration under ordinary contract principles subject only to an additional rule that we must strictly construe the declaration "in favor of the free use of land whenever strict construction does not contradict the plain and obvious purpose of the contracting parties." *Armstrong v. Ledges Homeowners Ass'n, Inc.*, 360 N.C. 547, 555, 633 S.E.2d 78, 85 (2006). Applying ordinary contract interpretation principles, the intent of this provision is clear and unambiguous: Shearon Farms is responsible for maintenance and repairs due to expected usage and weathering, but not for maintenance or repairs caused by unexpected damage, such as a fire.

We reach this interpretation by examining the plain language of the provision,

beginning with the phrase "normal usage and weathering." The plain meaning of the word "normal" in this context means "regular, usual." *Normal, Oxford English Dictionary* (2nd ed. 1989). Thus, this first clause in Article VIII, Section 4 obligates the association to make repairs expected to occur through deterioration over time.

The second clause of Article VIII, Section 4 contrasts with the first by excluding "maintenance and repairs made necessary by fire or other casualty or damage." These three terms—"fire," "casualty," and "damage"—all carry with them a meaning that indicates they are not normal and are not events that one would expect to occur simply given the passage of time. *See, e.g.*, *Fire, Oxford English Dictionary* (2nd ed. 1989); *Casualty, Oxford English Dictionary* (2nd ed. 1989); *Casualty*, *Black's Law Dictionary* (11th ed. 2019); *Damage, Oxford English Dictionary* (2nd ed. 1989); *Damage*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). Thus, these two clauses draw a distinction between maintenance stemming from normal, expected "usage and weathering," and maintenance stemming from unexpected events that damage the property.

Here, the complaint does not allege any damage resulting from normal usage and weathering. The exterior surface damage described in the complaint is "melting" siding that was "severely damaged due to *abnormal* reflections of extremely high heat from the windows on townhome units." (Emphasis added). The claims against JELD-WEN seek recovery for these "abnormal" damages through various tort and warranty

theories. Thus, under the plain language of the declaration, the association is not obligated by contract to repair this alleged damage, which is not due to normal usage or weathering.

Shearon Farms contends that we should ignore this plain language and instead interpret the provision to exclude only maintenance and repair costs that would be covered by the affected homeowners' standard property insurance policies. To support this argument, the association points to the phrase "casualty loss" in the subtitle of Article VIII, Section 4 and then to a separate section of the declaration that requires homeowners to maintain "casualty" insurance covering fire damage and other similar hazards. The association contends that, because "[d]efects from workmanship are not among those perils typically covered" by a standard property insurance policy, this Court should read these two separate provisions *in pari materia* and interpret Article VIII, Section 4 as excluding only property damage that would be covered by standard property insurance policies and accompanying endorsements.

This argument fails for two reasons. First, there are countless, simple ways to draft a provision that would exclude from the association's maintenance obligations any damage covered by homeowners' insurance policies. That is not what the plain, unambiguous language of Article VIII, Section 4 states. Rather than distinguishing between insured and uninsured damage, Article VIII distinguishes between expected maintenance and repairs—those resulting from "normal usage and weathering"—and

unexpected maintenance and repairs resulting from "fire or other casualty or damage." We must give meaning to this unambiguous language. *Hodgin v. Brighton*, 196 N.C. App. 126, 128–29, 674 S.E.2d 444, 446 (2009).

Second, the phrase "casualty loss" is not one used exclusively in the insurance context. For example, it is generally understood in the tax context to mean "the total or partial destruction of an asset resulting from *an unexpected or unusual event*, such as an automobile accident or a tornado." *Loss, Black's Law Dictionary* (11th ed. 2019) (emphasis added). And, more importantly, it has a meaning in ordinary English usage: a loss due to a "serious accident" or other "unfortunate occurrence." *Casualty, Oxford English Dictionary* (2nd ed. 1989). Nothing in the text or structure of Article VIII indicates that we should apply special meanings exclusive to the insurance field, rather than applying the plain meaning of the chosen words.

Moreover, the association's argument downplays the particular phrasing of Article VIII, which not only fails to mention insurance but also is not limited to the narrow definition of "casualty loss" that may be found in many homeowners' insurance policies. Instead, Article VIII broadly excludes from the association's maintenance obligations all "maintenance and repairs made necessary by fire or other casualty *or damage*." (Emphasis added). This phrasing indicates that casualty and damage are not entirely coextensive and that the drafter included both terms to achieve the desired scope of the provision. The association's interpretation of that

provision would read the phrase "or damage" out of the clause, limiting it solely to "fire" and to "casualty" losses as that term is understood in the property insurance context. Again, this runs counter to settled principles of contract interpretation, which require us to give meaning to the phrase "or damage." *Hodgin*, 196 N.C. App. at 128–29, 674 S.E.2d at 446. Accordingly, we reject Shearon Farms' argument that Article VIII, Section 4 is limited to losses covered by property insurance.

Finally, the Supreme Court also made a separate observation about the standing of the homeowners' association in *River Birch* that is equally applicable here: the Court rejected the use of associational standing because it could deprive individual members of other legal remedies that may be available to them. 326 N.C. at 131, 388 S.E.2d at 556.

That concern also is present in this case. Homeowners whose siding is damaged by the windows in their neighbors' homes may have other claims beyond those asserted in this action—most notably, potential claims against the neighbors whose windows are allegedly causing the damage. But the association, which represents all its members, cannot "be trusted to battle" that dispute. *Mangum*, 362 N.C. at 642, 669 S.E.2d at 282. Moreover, those claims—some members of the association suing other members—unquestionably do not "inure to the benefit" of all association members equally. *River Birch*, 326 N.C. at 555, 388 S.E.2d at 130. In a case in which some neighbors contend that the windows of other neighbors' homes are damaging

their property, an association representing all those members simply does not have the necessary stake in the outcome to ensure "concrete adverseness which sharpens the presentations of issues." *Mangum*, 362 N.C. at 642, 669 S.E.2d at 282. We therefore hold that Shearon Farms has not met its burden to show that it can pursue its claims based on the doctrine of associational standing described in *Hunt* and *River Birch*.

## B. Independent standing of Shearon Farms

Shearon Farms next argues that it has independent legal standing—separate from principles of standing on behalf of its members—because the association itself is "obligated to maintain the exterior surfaces of the townhomes" under the terms of the declaration. As explained above, this argument is meritless. The declaration does not require the association to maintain or repair the damage to the exterior surfaces of the individual townhomes that is alleged in the complaint. Additionally, there are no allegations in the complaint of damage caused by JELD-WEN to any property of the association itself, such as the common elements of the community.[2] Accordingly, the trial court properly rejected Shearon Farms' arguments concerning its independent standing to pursue claims against JELD-WEN.

---

[2] The complaint alleges damage to common elements but those damages are attributed to other defendants named in the complaint. Those defendants are not parties to this appeal, which concerns separate claims against JELD-WEN.

**C. Affidavit evidencing assignment of homeowners' claims**

Lastly, Shearon Farms argues that the trial court erred by declining to accept an affidavit it submitted in opposition to JELD-WEN's motion to dismiss. That affidavit certified the accuracy of several assignments by homeowners who are members of the association, transferring their rights to causes of action against JELD-WEN to the association. Shearon Farms contends that this affidavit cured any defects with respect to standing and that the trial court erred by not considering that affidavit in its standing analysis.

We reject this argument. "Our courts have repeatedly held that standing is measured at the time the pleadings are filed." *Quesinberry v. Quesinberry*, 196 N.C. App. 118, 123, 674 S.E.2d 775, 778 (2009). This is so, our Supreme Court has explained, because of the "basic rule that the jurisdiction of a court depends upon the state of affairs existing at the time it is invoked." *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585, 347 S.E.2d 25, 30 (1986). The affidavit that Shearon Farms sought to introduce into the trial record documented assignments that occurred *after* it commenced this lawsuit. The trial court properly declined to consider those assignments because they were not relevant to the question of whether the association had standing at the time it brought suit.

## Conclusion

Plaintiff Shearon Farms Townhome Owners Association II, Inc. lacks standing

to pursue the claims against JELD-WEN, Inc. asserted in the complaint. We therefore affirm the trial court's order dismissing those claims for lack of standing.

AFFIRMED.

Judges BRYANT and STROUD concur.