IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-115

No. 54A19-3

Filed 4 November 2022

STATE OF NORTH CAROLINA

v.

ROGELIO ALBINO DIAZ-TOMAS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 271 N.C. App. 97 (2020), affirming an order denying defendant's petition for writ of certiorari entered on 24 July 2019 by Judge Paul C. Ridgeway in Superior Court, Wake County. On 15 December 2020, the Supreme Court allowed defendant's petition for discretionary review as to additional issues. Heard in the Supreme Court on 6 January 2022.

*Joshua H. Stein, Attorney General, by Joseph L. Hyde, Assistant Attorney General, for the State-appellee.*

*Anton M. Lebedev for defendant-appellant.*

MORGAN, Justice.

¶ 1    Defendant appeals from a divided opinion of the Court of Appeals, 271 N.C. App. 97 (2020), in which the Court of Appeals affirmed an order of the Superior Court, Wake County, denying defendant's petition for writ of certiorari. Defendant's petition for writ of certiorari requested that the superior court review an order of the District Court, Wake County, in which that court denied defendant's Motion to Reinstate

Charges. Defendant's Motion to Reinstate Charges asked that the District Court reinstate, and place on the trial court's calendar, several criminal charges with which defendant had been charged which had been "dismissed with leave" by the district attorney's office pursuant to N.C.G.S. § 15A-932(a)(2) due to defendant's failure to appear before the trial court as ordered. The Court of Appeals determined that only the Superior Court's order denying defendant's certiorari petition, and not the District Court's order denying defendant's Motion to Reinstate Charges, was properly before the appellate court due to the limited nature of the Court of Appeals' discretionary allowance of defendant's certiorari petition before the lower appellate court. *State v. Diaz-Tomas*, 271 N.C. App. 97, 102 (2020). A dissenting opinion was filed in the matter in which the dissenting judge at the Court of Appeals considered the Superior Court to have erred in denying defendant's petition for writ of certiorari to review the order of the District Court. *Id.* at 103 (Zachary, J., concurring in part and dissenting in part). Defendant timely filed notice of appeal to this Court based upon the dissenting opinion. Therefore, an issue presented for our determination here is whether the Superior Court properly denied defendant's petition for writ of certiorari. This Court additionally allowed defendant's conditional petition for writ of certiorari to review the decision of the Court of Appeals, as well as defendant's conditional petition for writ of certiorari to review the order denying his aforementioned Motion to Reinstate Charges. In sum, this Court is positioned to

contemplate and resolve defendant's contentions regarding his ability to compel the reinstatement of his dismissed criminal charges and to compel the placement of these matters on a trial court's criminal case calendar for disposition. We hold that a criminal defendant does not possess the right to compel the district attorney, who has the authority to place the defendant's unresolved criminal charges in a dismissed-with-leave status, to reinstate the dismissed charges and to place the charges on a trial court's criminal case calendar for resolution. We also hold that a trial court lacks the authority to order that criminal charges which have been dismissed with leave by the duly empowered district attorney be reinstated and placed on a trial court's criminal case calendar against the will of the district attorney. This Court therefore affirms the decision of the Court of Appeals which affirms the Superior Court's denial of defendant's petition for writ of certiorari.

¶ 2        Defendant also filed a petition for discretionary review which this Court allowed in part and denied in part by way of a special order entered on 15 December 2020, in which we opted to consider additional issues presented by defendant as to whether this Court and the Court of Appeals erred in declining to issue writs of mandamus to the District Attorney of Wake County and the District Court, Wake County, in order to effect defendant's desired outcome which he originally sought in the trial court and which he pursued through his initial Motion to Reinstate Charges. We take this opportunity to reaffirm the clear and well-settled principle of law which

establishes that the extraordinary and discretionary writ of mandamus shall issue

only when the subject of the writ invokes a legal duty to act or to forebear from acting.

This recognition, coupled with our determination that the remaining issues contained

in defendant's petition for discretionary review are either academic in nature or are

rendered moot by this Court's allowance of defendant's multiple petitions for writ of

certiorari, obliges us to view defendant's petition for discretionary review as

improvidently allowed.

## I.  Factual and Procedural Background

Defendant received a citation from an officer with the Raleigh Police

Department charging him with the offenses of driving while impaired and driving

without an operator's license on 4 April 2015. Defendant failed to appear for

defendant's scheduled court date in the District Court, Wake County, on 24 February

2016, and on the following day, the trial court issued an order for defendant's arrest.

While defendant's whereabouts were still unknown, the State dismissed defendant's

charges with leave under the statutory authority and procedure of N.C.G.S. § 15A-

932(a)(2) on 11 July 2016. While it appears that defendant did not possess a valid

driver's license issued by the North Carolina Division of Motor Vehicles at the time

of his 4 April 2015 charges, defendant's ability to apply for and to receive a valid

North Carolina driver's license was indefinitely foreclosed as the result of his failure

to appear for his 24 February 2016 court date and the State's dismissal of his charges

with leave. On 24 July 2018, defendant was arrested in Davidson County and served with the order for arrest which had resulted from his previous failure to appear in court in Wake County. Defendant was given a new Wake County court date of 9 November 2018; however, defendant again failed to appear as scheduled in the District Court, Wake County, and a second order for defendant's arrest was issued on 13 November 2018. Defendant was arrested on 12 December 2018 pursuant to the second order for arrest, and was given another court date in the District Court, Wake County, of 18 January 2019. However, defendant's court date was "advanced," or moved to an earlier date, and was set for the 14 December 2018 administrative session of the District Court, Wake County.

¶ 4     Defendant appeared for the 14 December 2018 administrative session of the District Court, Wake County, but the assistant district attorney declined to reinstate—in other words, to bring out of dismissed-with-leave status—defendant's two unresolved charges. Defendant therefore filed a Motion to Reinstate Charges in District Court on 28 January 2019. In his motion, defendant made several arguments addressing the claimed "duty," "inherent authority," and "mandate" of the District Court either to reinstate or to permanently dismiss defendant's outstanding charges. The motion was accompanied by two affidavits executed by licensed attorneys practicing in Wake County who both represented that it was the regular practice of the Wake County District Attorney's Office to decline to reinstate charges which had

been placed in dismissed-with-leave status due to a defendant's failure to appear, unless the defendant agrees to plead guilty to the dismissed charges while simultaneously waiving the defendant's right to appeal these convictions to the Superior Court for a trial de novo. On 7 June 2019, defendant filed a document in the District Court, Wake County, captioned "Request for Prompt Adjudication of Defendant's Motion to Reinstate Charges" in which defendant asked the tribunal "to promptly adjudicate his previously filed Motion to Reinstate Charges" in light of the District Attorney's position. The chief district court judge responded to the filing, in a letter to defense counsel and the prosecutor dated 10 June 2019, that defendant's motion presented only questions of law, that an evidentiary hearing would not be required, and that the chief district court judge would consider any supportive filings by the parties "in arriving at a ruling in this matter."

¶ 5 The District Court, Wake County, entered an order on 15 July 2019 denying defendant's Motion to Reinstate Charges.[1] The District Court determined that "the State exercised its discretion and acted within its statutory authority pursuant to N.C.G.S. § 15A-932 by entering a dismissal with leave . . . after [d]efendant failed to appear for his regularly scheduled court date." The District Court explained that the

---

[1] During the interim period between the filing of defendant's motion and the District Court's ruling in the matter, defendant filed a Petition for Writ of Mandamus with this Court on 11 February 2019, which was promptly denied by this Court by an order dated 26 February 2019.

statutory language provided that in the event that a defendant is presented to the forum after failing to appear, "the prosecutor *may* reinstate the proceedings by filing written notice with the clerk," quoting the exact language of subsection (d) of N.C.G.S. § 15A-932 and adding emphasis to the permissive term "may." *See* N.C.G.S. § 15A-932(d) (2021). Because the presence of the word "may" in N.C.G.S. § 15A-932(d) "clearly indicates . . . that discretion to reinstate charges previously dismissed with leave lies solely with the prosecutor," the District Court reasoned that the district attorney's office had "exercised its discretion and acted within its statutory authority . . . by declining to reinstate the charges in this matter." The District Court further opined that this Court's directives in *State v. Camacho*, 329 N.C. 589 (1991), prohibited the trial court from invading the province of the "independently elected constitutional officer"—namely, the District Attorney and this official's subordinates—by having "criminal charges reinstated upon demand." The District Court concluded

> [t]hat for the court to reinstate the charges and mandate that the District Attorney prosecute the [d]efendant, as requested by [d]efendant in his motion, . . . an unauthorized and impermissible interference with the District Attorney's performance of constitutional and statutory duties, which only the District Attorney or her lawful designees may perform, [would occur].

¶ 6       On 22 July 2019, defendant filed a petition for writ of certiorari in the Superior Court, Wake County, seeking a full review of the District Court's order which denied

his motion. The Superior Court denied defendant's petition in an order dated 24 July 2019, explaining that a writ of certiorari was a discretionary writ "to be issued only for good or sufficient cause shown," quoting *Womble v. Moncure Mill & Gin Co.*, 194 N.C. 577, 579 (1927), and finding that defendant had failed to present such good or sufficient cause to warrant certiorari review. The Superior Court further found that defendant was "not entitled to the relief requested." Defendant next petitioned the Court of Appeals for writ of certiorari, requesting that the lower appellate court review both the District Court's order denying his Motion to Reinstate Charges as well as the Superior Court's order denying his petition for writ of certiorari. The Court of Appeals allowed defendant's petition on 15 August 2019 for the limited purpose of reviewing the Superior Court's denial of defendant's petition for writ of certiorari.

¶ 7        The Court of Appeals issued a divided, published opinion on 21 April 2020, affirming the Superior Court's denial of defendant's certiorari petition. *Diaz-Tomas*, 271 N.C. App. at 102. In light of the longstanding case law from this Court institutionalizing the principle that "[c]ertiorari is a discretionary writ, to be issued only for good or sufficient cause shown" which defendant candidly recognized in his appellate presentation, the Court of Appeals majority employed an abuse of discretion standard in assessing the correctness of the Superior Court's denial of defendant's petition. *Id.* at 100–01 (emphasis omitted) (quoting *Womble*, 194 N.C. at 579). The lower appellate court determined that defendant failed to meet his "burden of

showing that the decision of the Superior Court in denying his petition for certiorari was 'manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* at 101 (quoting *State v. Hennis*, 323 N.C. 279, 285 (1988)). Although defendant asserted that he was entitled to the writ because he had presented "appropriate circumstances" and "compelling" reasons for certiorari to be granted by the Superior Court, the Court of Appeals majority concluded that "[i]t is not enough that [defendant] disagree with it, or argue — incorrectly — that the trial court was obligated to grant his petition" in order to show an abuse of discretion. *Id.* at 101. Instead, "[d]efendant has to show that the Superior Court's decision was unsupported by reason or otherwise entirely arbitrary." *Id.* at 101. After all, a writ of certiorari "is not one to which the moving party is entitled as a matter of right." *Id.* at 100 (quoting *Womble*, 194 N.C. at 579).

¶ 8        The dissenting opinion disagreed with the view of the Court of Appeals majority that defendant had failed to show an abuse of discretion in the Superior Court's denial of defendant's petition for writ of certiorari. *Id.* at 106 (Zachary, J., concurring in part and dissenting in part). The dissent ventured that the Superior Court had provided no particular reason for the denial of defendant's petition other than the bare observations that defendant had failed to show "sufficient cause," for the allowance of the writ and that defendant otherwise possessed "no other avenue to seek redress" for "alleg[ed] statutory and constitutional violations akin to those at

issue in *Klopfer* [*v. North Carolina*, 386 U.S. 213 (1967)] and *Simeon* [*v. Hardin*, 339 N.C. 358 (1994)]." *Id.* at 108–11 (Zachary, J., concurring in part and dissenting in part). Because article I, section 18 of the North Carolina Constitution guarantees "access to the court to apply for redress of injury," the Court of Appeals dissent opined that the Superior Court should have allowed defendant's petition for writ of certiorari in order to accord defendant his sole remaining route to review an apparent "no bargain": either to accept the outcome that his unresolved criminal charges would remain in dismissed-with-leave status without defendant's ability to regain his driver's license or to plead guilty as charged while simultaneously waiving his right to appeal for a trial de novo. *Id.* at 110 (Zachary, J., concurring in part and dissenting in part) (quoting *Simeon*, 339 N.C. at 378).

## II.    Analysis

## A.  Discretion of the District Attorney Under N.C.G.S. § 15A-932

¶ 9        In order to resolve this case, we first consider the issue of whether a district attorney may be compelled to reinstate charges under the statutory procedure described in N.C.G.S. § 15A-932. In *Camacho*, this Court observed that

> [t]he several District Attorneys of the State are independent constitutional officers, elected in their districts by the qualified voters thereof, and their special duties are prescribed by the Constitution of North Carolina and by statutes. Our Constitution expressly provides that: "The District Attorney shall be responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district." The clear mandate of

> that provision is that the responsibility and authority to
> prosecute all criminal actions in the superior courts is
> vested solely in the several District Attorneys of the State.

*Camacho*, 329 N.C. at 593 (extraneity omitted) (quoting N.C. Const. art. IV, § 18). Prosecution of criminal offenses is the "sole and exclusive responsibility" of the duly elected district attorneys of the state. *In re Spivey*, 345 N.C. 404, 409 (1997). The General Assembly possesses the authority to frame the duties of a district attorney as the legislative body has established in N.C.G.S. § 7A-61, and one such duty includes the obligation to "prosecute in a timely manner in the name of the State all criminal actions." N.C.G.S. § 7A-61 (2021). The General Assembly's dictate that criminal prosecutions must be executed in a "timely manner" serves to reiterate the North Carolina Constitution's grant of exclusive authority to the state's district attorneys regarding the prompt handling, scheduling, and disposition of criminal charges which are brought against alleged violators of the law. In the present case, the elected District Attorney initially satisfied the mandates of the office's duties in handling defendant's criminal charges by timely scheduling defendant's matters for disposition in the name of the State by placing them on a court calendar pursuant to the prosecutor's constitutional responsibility and authority to do so in the official's sole and exclusive power.

¶ 10        Section 15A-932 establishes the procedure by which the General Assembly has enabled the state's district attorneys to enter a criminal case's "[d]ismissal with leave

. . . when a defendant . . . [f]ails to appear . . . and cannot readily be found." N.C.G.S. § 15A-932(a) (2021). This statute empowers a district attorney or the officeholder's designee to place a pending criminal charge in dismissed-with-leave status either "orally in open court or by filing the dismissal in writing with the clerk," which has the effect of removing "the case from the docket of the court." N.C.G.S. § 15A-932(b)–(c). Although the case is removed from the docket of the trial court, and thus is not calendared before the trial court on a routine basis as an active criminal charge would be, nonetheless "all process outstanding retains its validity, and all necessary actions to apprehend the defendant, investigate the case, or otherwise further its prosecution may be taken, including the issuance of nontestimonial identification orders, search warrants, new process, initiation of extradition proceedings, and the like." N.C.G.S. § 15A-932(b).

¶ 11    Of additional relevance to defendant's current appeal, the General Assembly has directed the Division of Motor Vehicles to revoke a defendant's driving privileges upon receiving "notice from a court that the person was charged with a motor vehicle offense and . . . failed to appear." N.C.G.S. § 20-24.1(a) (2021). The statute goes on to provide that:

> (b) A license revoked under this section remains revoked until the person whose license has been revoked:
>
> > (1) disposes of the charge in the trial division in which he failed to appear when the case was last called for trial or hearing[.]

N.C.G.S. § 20-24.1(b). In order to "dispose[ ] of the charge in the trial division," N.C.G.S. § 20-24.1(b), the charge must be reinstated in order to be placed back on the trial court docket, because when a district attorney places a charge in dismissed-with-leave status, it "results in removal of the case from the docket of the court," N.C.G.S. § 15A-932(b). Otherwise, the case record will reflect that the defendant's driving privileges remain in an indefinite state of suspension. Section 15A-932 provides a singular process by which a charge may be reinstated: "Upon apprehension of the defendant, or in the discretion of the prosecutor when he believes apprehension is imminent, the prosecutor *may* reinstitute the proceedings by filing written notice with the clerk" of court. N.C.G.S. § 15A-932(d) (emphasis added).

¶ 12      "Ordinarily when the word 'may' is used in a statute, it will be construed as permissive and not mandatory." *In re Hardy*, 294 N.C. 90, 97 (1978). Settled principles of statutory construction constrain this Court to hold that the use of the word "may" in N.C.G.S. § 15A-932(d) grants exclusive and discretionary power to the state's district attorneys to reinstate criminal charges once those charges have been dismissed with leave following a defendant's failure to appear in court to respond to them. In conjunction with our determination, it is worthy of note that the General Assembly created a single statutory exception in N.C.G.S. § 15A-932(d1) to the requirement that a district attorney exercise the official's discretion to "reinstitute the proceedings" in order to dispose of the charges which have been dismissed with

leave, while simultaneously empowering a defendant to activate dormant charges, without the involvement of a district attorney, which have been placed in dismissed-with-leave status. Subsection 15A-932(d1) states, in pertinent part:

> If the proceeding was dismissed pursuant to subdivision (2) of subsection (a) of this section [for failing to appear at a criminal proceeding at which his attendance is required, and the prosecutor believes the defendant cannot be readily found] . . . and the defendant later tenders to the court that waiver and payment in full of all applicable fines, costs, and fees, the clerk shall accept said waiver and payment without need for a written reinstatement from the prosecutor. Upon disposition of the case pursuant to this subsection, the clerk shall recall any outstanding criminal process in the case . . . .

N.C.G.S. § 15A-932(d1). Contrary to defendant's argument that he was entitled to the automatic reactivation of defendant's criminal charges by the District Attorney upon defendant's chosen time to be available to the trial court to respond to defendant's charges which had been dismissed with leave after defendant's multiple failures to appear in court to respond to said charges when they were calendared on the trial court docket, the General Assembly has expressly designated in N.C.G.S. § 15A-932(d) and (d1) the narrow, specified ways in which criminal charges which have been placed in dismissed-with-leave status can be resolved.

¶ 13 In light of the cited constitutional, statutory, and appellate case law authorities which are all in clear and unequivocal tandem with one another, a district attorney cannot be compelled to reinstate the charges, due to the official's recognized exclusive

and discretionary power to reinstate criminal charges once those charges have been

dismissed with leave following a defendant's failure to appear in court to respond to

the charges when calendared on a trial court docket.

**B. Authority of the Trial Court to Reinstate Charges**

¶ 14        In his Motion to Reinstate Charges in District Court, defendant asked the trial

tribunal to reinstate his criminal charges that were dismissed with leave by the State,

to set a court date for his criminal matters, and to grant defendant any other and

further relief that the District Court deemed to be just and proper given the

circumstances.

¶ 15        The trial courts of this state enjoy broad authority to control the conduct of

trial and the decorum of the courtroom within statutory and constitutional

boundaries. *See Shute v. Fisher*, 270 N.C. 247, 253 (1967) ("It is impractical and would

be almost impossible to have legislation or rules governing all questions that may

arise on the trial of a case. Unexpected developments, especially in the field of

procedure, frequently occur. When there is no statutory provision or well recognized

rule applicable, the presiding judge is empowered to exercise his discretion in the

interest of efficiency, practicality and justice."); *State v. Rankin*, 312 N.C. 592, 598

(1985) ("[A] trial judge has the duty to supervise and control the course and conduct

of a trial, and that in order to discharge that duty he is invested with broad

discretionary powers."); *accord M.E. v. T.J.*, 380 N.C. 539, 2022-NCSC-23, ¶ 42.

However, this Court has not ever held that, despite a trial court's wide and entrenched authority to govern proceedings before it as the trial court manages various and sundry matters, a trial court may invade the purview of the exclusive and discretionary power of a district attorney which was granted to the official through the provisions of the North Carolina Constitution and the statutory laws enacted by the General Assembly, absent a determination that the prosecutorial discretion was "being applied in an unconstitutional manner." *Simeon*, 339 N.C. at 378. As we have explained,

> it must be remembered that the elected District Attorneys of North Carolina are constitutional officers of the State whose duties and responsibilities are in large part constitutionally and statutorily mandated. The courts of this State, including this Court, must, at the very least, make every possible effort to avoid unnecessarily interfering with the District Attorneys in their performance of such duties. Therefore, any order tending to infringe upon the constitutional powers and duties of an elected District Attorney must be drawn as narrowly as possible.

*Camacho*, 329 N.C. at 595.

¶ 16    In the instant case, the district attorney's office exercised its exclusive authority and discretion regarding its constitutional responsibility to prosecute criminal actions when, on 14 December 2018, it declined to reinstate defendant's charges when defendant belatedly presented himself in court after his second failure to appear in court on the alleged offenses. Since defendant's requests of the District

Court in his motion to reinstate his "dismissed with leave" criminal charges would have the effect, if granted by the District Court, of infringing upon the constitutional powers and duties of a district attorney as disapproved by *Camacho*, we hold that the trial tribunal did not err in denying defendant's Motion to Reinstate Charges in District Court. The District Court's allowance of defendant's motion also would have contravened our admonition to the courts of this state, as we announced in *Camacho*, to "draw[ ] as narrowly as possible" any curtailment of a district attorney's constitutional powers and duties. *Id.*

¶ 17 Defendant argues that N.C.G.S. § 20-24.1(b1) affords him "an absolute statutory right to have the matter reinstated for a prompt trial or hearing." Despite this bald assertion, N.C.G.S. § 20-24.1(b1) contains no mention of the reinstatement of criminal charges. Subsection 20-24.1(b1) states in its entirety: "A defendant must be afforded an opportunity for a trial or a hearing within a reasonable time of the defendant's appearance. Upon motion of a defendant, the court must order that a hearing or a trial be heard within a reasonable time." N.C.G.S. § 20-24.1(b1). Defendant conveniently construes the term "appearance" to leniently apply to the eventual presentation of himself—whenever that may be—at a calendared session of the trial court after defendant has failed to appear for court when his criminal charges were originally scheduled for resolution within a reasonable time. After failing to appear for court on two scheduled opportunities to resolve his criminal

charges when the District Attorney placed defendant's charges on a trial court docket for resolution within a reasonable time, defendant's insistence pursuant to his construction of N.C.G.S. § 20-24.1(b1) upon the reinstatement of his charges by the District Attorney or by the District Court "for a trial or a hearing within a reasonable time of the defendant's appearance" rings hollow when defendant did not come to court to respond to the criminal charges until nearly three years had passed since his original court date. Firstly, as previously stated, the allowance of defendant's demand that his "dismissed with leave" charges be activated would offend the delegated exclusive and discretionary power of the District Attorney to reinstate defendant's criminal charges after the charges were dismissed with leave due to defendant's failure to appear in court to answer to the charges. And secondly, if this Court were to interpret N.C.G.S. § 20-24.1(b1) as defendant contends, then we would ignore the identical caution which we articulated in *Camacho* for the state courts with regard to the philosophy to "make every possible effort to avoid unnecessarily interfering with the District Attorneys in their performance of [constitutionally and statutorily mandated] duties," such that "any order tending to infringe upon the constitutional powers and duties of an elected District Attorney must be drawn as narrowly as possible." *See Camacho*, 329 N.C. at 595. Accordingly, defendant's argument that N.C.G.S. § 20-24.1(b1) gives him "an absolute statutory right to have the matter reinstated for a prompt trial or hearing" is without merit.

**C. Discretion of the Superior Court to Deny Certiorari Petitions**

¶ 18    A criminal defendant may seek certiorari review "when provided for by [the Criminal Procedure Act], by other rules of law, or by rule of the appellate division." N.C.G.S. § 15A-1444(g) (2021). "The authority of a superior court to grant the writ of certiorari in appropriate cases is, we believe, analogous to the Court of Appeals' power to issue a writ of certiorari," in the context of the Superior Court's review of a lower tribunal's action. *State v. Hamrick*, 110 N.C. App. 60, 65, *appeal dismissed, discretionary review denied*, 334 N.C. 436 (1993). A writ of certiorari is "an *extraordinary* remedial writ to correct errors of law," *Button v. Level Four Orthotics & Prosthetics, Inc.*, 380 N.C. 459, 2022-NCSC-19, ¶ 19 (emphasis added) (quoting *State v. Simmington*, 235 N.C. 612, 613 (1952)), and its issuance is only appropriate when a defendant has shown merit in his arguments concerning the action to be reviewed or that "error was probably committed below," *State v. Ricks*, 378 N.C. 737, 2021-NCSC-116, ¶ 6 (quoting *State v. Grundler*, 251 N.C. 177, 189 (1959)). A writ of certiorari "is not one to which the moving party is entitled as a matter of right." *State v. Walker*, 245 N.C. 658, 659 (1957), *cert. denied*, 356 U.S. 946 (1958); *see Surratt v. State*, 276 N.C. 725, 726 (1970) (per curiam) (holding that the Court of Appeals was errorless in denying certiorari review of a trial court's denial of a habeas corpus petition because such judgment was "reviewable only by way of *certiorari* if the court *in its discretion* chooses to grant such writ" (second emphasis added)). The only

exception to the entirely discretionary nature of certiorari review is the circumstance of a criminal defendant's loss of the right to appeal "due to some error or act of the court or its officers, and not to any fault or neglect of the [defendant]." *State v. Moore*, 210 N.C. 686, 691 (1936).

¶ 19        As we have determined, the District Attorney could not be compelled either by demand of defendant or by order of the District Court to reinstate defendant's charges which had been placed in the status of "dismissed with leave" after defendant had failed to appear in court as scheduled in order to respond to the criminal allegations against defendant. As we have further concluded, the District Court properly denied defendant's Motion to Reinstate Charges in District Court. Consequently, defendant failed to demonstrate that there was merit in his arguments or that error was probably committed by the District Court so as to qualify for the Superior Court's issuance of the extraordinary remedial writ in order for the Superior Court to correct, through certiorari review, any errors committed by the District Court. The Superior Court expressly and correctly based its decision to deny defendant's petition for writ of certiorari on its accurate determination that "[d]efendant has failed to provide 'sufficient cause' to support the granting of his [p]etition" and that "[d]efendant is not entitled to the relief requested." Therefore, the Superior Court properly acted within its discretion in denying defendant's petition for writ of certiorari.

**D. Denial of the Petitions for a Writ of Mandamus**

¶ 20    Along with defendant's efforts to obtain the reinstatement of his criminal charges before the District and Superior Courts of Wake County, coupled with defendant's desire to obtain appellate review of both courts' respective denials of those efforts before the Court of Appeals, defendant filed multiple, duplicative petitions for a writ of mandamus before the Court of Appeals and this Court. "A writ of mandamus is an extraordinary court order to 'a board, corporation, inferior court, officer or person commanding the performance of a specified official duty imposed by law.'" *In re T.H.T.*, 362 N.C. 446, 453 (2008) (quoting *Sutton v. Figgatt*, 280 N.C. 89, 93 (1971)). In order to obtain the *extraordinary* relief provided by a writ of mandamus, the petitioner must demonstrate: (1) that the petitioner possesses a clear and established legal right to the act to be commanded; (2) that the party who is potentially subject to the writ has a clear and undebatable legal duty to perform the act requested in the petition; (3) that the act requested in the petition is ministerial in nature and does not involve exercising the discretion of the party who is potentially subject to the writ[2]; and (4) that the party who is potentially subject to the writ has, after the expiration of the appropriate time for the performance of the act requested in the petition, failed to perform the act requested. *Id.* at 453–54. In any event, a writ of "mandamus may not be used as a substitute for an appeal." *Snow v. N.C. Bd. of*

---

[2] "Nevertheless, a court may issue a writ of mandamus to a public official compelling the official to make a discretionary decision, as long as the court does not require a particular result." *In re T.H.T.*, 362 N.C. 446, 454 (2008).

*Architecture*, 273 N.C. 559, 570 (1968). The examination which we have already employed in assessing defendant's multiple theories and arguments regarding his claimed right to the reinstatement of his criminal charges after they were placed in the status of "dismissed with leave" due to defendant's failure to appear in court when scheduled similarly applies regarding defendant's petition for the extraordinary writ of mandamus. Defendant fails to satisfy any of the elements for the appellate courts' issuance of a writ of mandamus because he does not have a right to compel the activation of his charges which have been dismissed with leave or to require the exercise of discretionary authority to fit his demand for prosecutorial action regarding his charges. Defendant's petitions for a writ of mandamus are properly denied.

### E. *Klopfer, Simeon* Distinguished

¶ 21      In the case of *Klopfer v. North Carolina* (*Klopfer II*), 386 U.S. 213 (1967), the Supreme Court of the United States granted a writ of certiorari to review the decision of this Court in *State v. Klopfer* (*Klopfer I*), 266 N.C. 349 (1966). In *Klopfer I*, this Court affirmed a trial court's order which tacitly allowed a prosecutor to utilize a procedural rule which bore some similarity to the dismissal-with-leave procedure employed in the case at bar. The procedure in *Klopfer*, known as a "*nolle prosequi* with leave," allowed prosecutors to effectively pause their prosecution of a crime by releasing a defendant from the accused's responsibility to appear for any further court dates while simultaneously maintaining the legitimacy of an indictment filed against

the defendant. *Klopfer II*, 368 U.S. at 214. "Its effect is to put the defendant without day, that is, he is discharged and permitted to go whithersoever he will, without entering into a recognizance to appear at any other time." *Id.* (quoting *Wilkinson v. Wilkinson*, 159 N.C. 265, 266–67 (1912)). Over defendant Klopfer's objection, the State moved the trial court for permission to take a *nolle prosequi* with leave after a first attempt to prosecute defendant for a trespassing charge which had resulted in a hung jury. *Id.* at 217–18. The trial court granted the State's motion. *Id.* at 218. Defendant Klopfer appealed the trial court's grant of the State's motion to enter a *nolle prosequi* to this Court, asserting that the effect of the *nolle prosequi* procedure of pausing the prosecution of his alleged crime, without disposing of the charge itself, violated his Sixth Amendment right to a speedy trial as it was applied to the individual states through the Fourteenth Amendment. *Id.* This Court affirmed the trial court's order granting the State's *nolle prosequi* motion and held that the State had "followed the customary procedure" to obtain the trial court's permission to enter a *nolle prosequi* in the defendant's case. *Klopfer I*, 266 N.C. at 351. This Court reasoned that

> [w]ithout question a defendant has the right to a speedy trial, if there is to be a trial. However, we do not understand the defendant has the right to compel the State to prosecute him if the State's prosecutor, in his discretion and with the court's approval, elects to take a *nolle prosequi*. In this case one jury seems to have been unable to agree. The solicitor may have concluded that another go at it would not be worth the time and expense of another

effort.

*Id*. at 350.

¶ 22        The Supreme Court of the United States reversed the decision of this Court

and remanded the case to the North Carolina courts for proceedings not inconsistent

with its opinion. *Klopfer II*, 386 U.S. at 226. The high court opined:

> The North Carolina Supreme Court's conclusion—
> that the right to a speedy trial does not afford affirmative
> protection against an unjustified postponement of trial for
> an accused discharged from custody—has been explicitly
> rejected by every other state court which has considered
> the question. That conclusion has also been implicitly
> rejected by the numerous courts which have held that a
> *nolle prossed* indictment may not be reinstated at a
> subsequent term.
>
> We, too, believe that the position taken by the court
> below was erroneous. The petitioner is not relieved of the
> limitations placed upon his liberty by this prosecution
> merely because its suspension permits him to go
> "whithersoever he will." The pendency of the indictment
> may subject him to public scorn and deprive him of
> employment, and almost certainly will force curtailment of
> his speech, associations and participation in unpopular
> causes. By indefinitely prolonging this oppression, as well
> as the "anxiety and concern accompanying public
> accusation," the criminal procedure condoned in this case
> by the Supreme Court of North Carolina clearly denies the
> petitioner the right to a speedy trial which we hold is
> guaranteed to him by the Sixth Amendment of the
> Constitution of the United States.

*Id*. at 219–22 (footnotes omitted).

¶ 23        The dissenting opinion of the Court of Appeals in this case adopted the view

that the Superior Court erred in denying defendant's petition for writ of certiorari, citing the outcome of *Klopfer II* in the Supreme Court of the United States and the outcome of *Simeon*[3] in this Court as representative of the legal issues for which defendant should have been afforded further review regarding his inability to obtain a trial or hearing to resolve his criminal charges which the District Attorney maintained in dismissed-with-leave status. *Diaz-Tomas*, 271 N.C. App. at 110 (Zachary, J., concurring in part and dissenting in part). However, both cases are readily distinguishable from the current case in the salient respect that in *Klopfer II* and in *Simeon*, the District Attorney was recognized to be in a position, based on the facts presented in those respective cases, to tactically utilize the official's prosecutorial discretion to prevent a defendant who continually sought to resolve his active criminal charges through the defendant's consistent availability to the trial court from doing so; alternatively, in the present case, the District Attorney placed defendant's criminal charges on a trial court docket for prosecution in a timely manner on multiple occasions while defendant continually sought to evade the

---

[3] Upon plaintiff Simeon's allegations in his amended civil complaint that "the district attorney delayed calendaring [Simeon's] case for trial for the tactical purposes of keeping him in jail, delaying a trial at which he was likely to be acquitted, and pressuring him into entering a guilty plea," and that "the district attorney purposely delays calendaring cases for trial for the purpose of exacting pretrial punishments and pressuring other criminal defendants into pleading guilty," this Court determined that the allegations were "sufficient to state a claim that the statutes which grant the district attorney calendaring authority are being applied in an unconstitutional manner," and therefore "we reverse[d] the order of the trial court which granted defendant district attorney's motion to dismiss and remand[ed] th[e] case to that court." *Simeon v. Hardin*, 339 N.C. 358, 378, 379 (1994).

resolution of his active criminal charges through his consistent unavailability to the trial court by failing to appear as scheduled for court until nearly three years after defendant's criminal charges were placed in dismissed-with-leave status. These important differences between the instant case and the cases of *Klopfer II* and *Simeon*, which the Court of Appeals dissent cites as persuasive here, render the dissenting view as misguided based upon its reliance on inapplicable cases.

### III.   Conclusion

Based upon our analysis of the factual and procedural background of this case, this Court modifies the decision of the Court of Appeals to the extent that we affirm the outcome reached by the lower appellate court without prejudice to defendant to pursue any other legal remedy which has not been determined by this Court's opinion. Discretionary review of issues which were not addressed in our review of the Court of Appeals majority opinion or in our discussion of the Court of Appeals dissenting opinion is dismissed as improvidently allowed.

AFFIRMED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

Justice BERGER did not participate in the consideration or decision of this case.